EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carlos A. Maldonado Mir<br>        Demandante-Peticionario<br><br>                 v.<br><br>Rossanne M. Burris<br>T/C/C Rossane Marie Schade<br>y como Rossanne M. Maldonado<br>        Demandada-Recurrida | Certiorari<br><br>2001 TSPR 68 |

Número del Caso: CC-1999-923

Fecha: 8/mayo/2001

Tribunal de Circuito de Apelaciones:

                        Circuito Regional I

Juez Ponente:

                        Hon. Angel González Román

Abogados de la Parte Peticionaria:

                        Lcdo. Manuel E. Moraza Choisne
                        Lcda. Marisa Brugueras

Abogada de la Parte Recurrida:

                        Lcda. Eva Y. Toledo Irizarry

Materia: Divorcio

        Este documento constituye un documento oficial del Tribunal Supremo que está
        sujeto a los cambios y correcciones del proceso de compilación y publicación
        oficial de las decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos A. Maldonado Mir

    Demandante-Peticionario

      vs.                        CC-1999-923        Certiorari

Rossanne M. Burris
T/C/C Rossane Marie Schade
y como Rossanne M. Maldonado

    Demandada-Recurrida

Opinión del Tribunal emitida por el Juez Asociado señor FUSTER BERLINGERI

San Juan, Puerto Rico, a 8 de mayo de 2001.

El presente caso nos brinda la oportunidad de esclarecer e ilustrar cómo los tribunales deben sopesar los factores pertinentes en relación con la concesión de la custodia de un menor.

I

Carlos Maldonado Mir y Rossanne Schade procrearon una hija, Sofía Anabelle, quien nació el 29 de noviembre de 1994. Por razones de desavenencias entre Maldonado y Schade, ésta se trasladó a Estados Unidos el 29 de mayo de 1995, y se llevó consigo a su hija Sofía. Durante dos años ambas residieron en cuatro lugares distintos de

ese país mientras Schade procuraba empleo en su profesión de dentista.

El 31 de julio de 1996, Maldonado presentó una demanda de divorcio contra Schade, **por la causal de abandono**, en el Tribunal de Primera Instancia, Sala de San Juan. El 16 de diciembre de ese año, Maldonado solicitó del tribunal la custodia "pendente lite" de su hija, que le fue concedida el 12 de mayo de 1997, luego de que Schade no compareciera a la vista judicial celebrada varias semanas antes en la cual se dilucidó el asunto, no obstante haber sido debidamente emplazada. Meses más tarde, la menor quedó bajo la custodia de su padre.

Luego de varios trámites procesales, el 24 de febrero de 1998, el foro de instancia dictó una resolución en la que declaró no ha lugar la petición de custodia y de relaciones materno filiales solicitada por Schade.

Tras varios incidentes procesales adicionales, el 29 de junio de 1998, cuando la menor tenía cuatro (4) años de edad, el foro de instancia dictó una sentencia mediante la cual le concedió finalmente la custodia de la menor a su madre, y le ordenó a Maldonado que entregara su hija a Schade a los tres (3) días de notificada dicha sentencia. La orden referida se emitió para facilitar que Schade se llevara a su hija a Inglaterra donde la madre habría de residir por haber sido trasladada allí por razón de su trabajo con la Fuerza Aérea de Estados Unidos.

Ante esta situación, Maldonado acudió ante al Tribunal de Circuito de Apelaciones. El 2 de julio de 1999 dicho tribunal paralizó la orden referida del foro de instancia y dictaminó que

la menor continuaría bajo la custodia de su padre hasta que otra cosa se dispusiera. El 8 de octubre de 1999, el foro apelativo confirmó el dictamen de instancia, por lo que Maldonado acudió ante nos mediante petición de certiorari, acompañada con una moción en auxilio de jurisdicción.

Luego de varios trámites procesales, el 21 de enero de 2000, expedimos el recurso solicitado para revisar el dictamen del foro apelativo. El 6 de marzo de 2000, el peticionario presentó su alegato; y el 27 de marzo la recurrida presentó el suyo. Con el beneficio de ambas comparecencias, pasamos a resolver.

II

En esencia, nos toca decidir si fueron correctos los dictámenes de los foros *a quo* de conceder la custodia de Sofía Anabelle a su madre. Para hacer esta difícil y angustiosa decisión, debemos resolver si dichos dictámenes responden **al mejor bienestar de la menor**, que es el principio cardinal que rige en estos casos. Sánchez Cruz v. Torres Figueroa, 123 D.P.R. 418 (1989); Nudelman v. Ferrer Bolivar, 107 D.P.R. 495 (1978); Centeno Alicea v. Ortiz, 105 D.P.R. 523 (1977); Marrero Reyes v. García Ramírez, 105 D.P.R. 90 (1976).

El foro de instancia en su sentencia referida, hizo los siguientes señalamientos en apoyo de su dictamen:

(1)  que la menor en este caso se encontraba feliz y tranquila tanto en compañía de la madre como en la compañía del padre;

(2)   que gozaba de buena salud física, tanto cuando se encontraba bajo la custodia de la madre como bajo la custodia del padre;

(3)   que la menor era muy querida, tanto por su madre como por su padre; y que se relacionaba muy bien con ambos;

(4)   que la menor se adaptaba muy bien a los ambientes (hogar, escuela y comunidad) que rodeaban la custodia de ambos padres;

(5)   que tanto el padre como la madre eran personas inteligentes, equilibradas y que poseían profesiones que les permitían ganarse la vida holgadamente.

Todos los señalamientos anteriores tenían apoyo adecuado en la prueba que desfiló ante el foro de instancia. Con arreglo a ello, dicho foro entonces expresó su creencia de que "ambas partes se encuentran en igualdad de condiciones para satisfacer debidamente las necesidades afectivas, morales y económicas de la menor". Concluyó expresamente "que ambas partes están capacitadas para brindarle a la menor un buen ambiente y condiciones similares de vida".

No obstante haber emitido el juicio referido en el párrafo anterior, el foro de instancia le concedió la custodia de Sofía Anabelle a su madre. La única explicación que dicho foro expresó en apoyo de esa decisión fue que debido al trabajo que tenía la madre ahora, quien forma parte de la Fuerza Aérea de los Estados Unidos, se dificultaba su derecho a continuar las relaciones de

familia con su hija. Indicó expresamente el foro de instancia que a la madre "se le hace más difícil... tomar tiempo de su trabajo para viajar a otro país a relacionarse con su hija", mientras que con respecto al padre "se ha dejado ver que él sí cuenta con esa movilidad o facilidad para poder relacionarse con la menor". Con arreglo a esta noción, el foro de instancia dispuso que la madre tendría la custodia de la menor; que el padre tendría derecho a tener a la menor con él la mitad del tiempo del verano y la mitad del tiempo navideño; y que además "en cualquier otro momento que el padre pueda tomar vacaciones e ir a visitar la menor, la madre permitirá la relación siempre y cuando no se saque a la menor de la ciudad o pueblo donde viva con su madre...".

A la luz de lo anterior, la cuestión específica ante nos se reduce a decidir si la **posibilidad** de que el padre pueda viajar en algún momento para visitar a su hija, que la madre supuestamente no tiene con igual facilidad, es razón suficiente para concederle la custodia de la menor a la madre, frente a **otros factores y criterios pertinentes** que el foro de instancia debió haber ponderado adecuadamente.

### III

Surge de la transcripción de la prueba que obra en autos que no sólo la psicóloga que sirvió de perito al peticionario, sino además el perito psicólogo del propio tribunal de instancia y la trabajadora social del tribunal **—los tres peritos— unánimemente recomendaron el hogar paterno sobre el materno como el más apto para la custodia de la menor**. Dicha recomendación tuvo, en esencia, varios fundamentos. Primero, que la menor ha estado

en la compañía del padre desde octubre de 1997 y que desarraigarla del buen ambiente presente, al cual se ha acostumbrado, tendría efectos adversos sobre la menor. **En efecto, la menor ha vivido con su padre durante los últimos cuatro (4) de los seis (6) años que tiene actualmente**. Segundo, que la menor en Puerto Rico tiene el cariño y el cuidado no sólo de su padre, sino también de sus abuelos paternos, de tíos y de una primita que es su compañera inseparable de juegos. En cambio, la madre, que vive sola en una base militar en el extranjero, no puede proporcionarle a la hija el complemento de afectos y cuidados que representa una **familia extendida unida**. Finalmente, que la madre presenta un posible problema serio de **inestabilidad que recaería sobre la menor**, en la medida en que su trabajo la expone a mudarse constantemente de una base militar a otra.

Con arreglo a estos factores, tiene razones válidas el peticionario para cuestionar los dictámenes de los foros *a quo* que aquí se han impugnado. El contundente testimonio pericial aludido en apoyo de concederle la custodia al padre de la menor, y los factores en que se ampara dicho testimonio, permiten concluir que no fue correcta la apreciación del foro de instancia en este caso de que ambos padres podían brindarle condiciones similares de vida a la menor. Dan apoyo al criterio expuesto por tratadistas de que realmente nunca son iguales las circunstancias de los padres en los casos de custodia. E. González Tejera, Bienestar del Menor: Señalamientos en Torno a la Patria Potestad, Custodia y Adopción, 54 Rev. Jur. UPR, pág. 454 (1985).

En este caso es evidente que al considerar y ponderar debidamente **todos** los factores pertinentes, el mejor bienestar de la menor se procura concediéndole la custodia al padre peticionario. El foro de instancia, sin ofrecer fundamentos adecuados para ello, descartó la clara y unánime opinión de los únicos tres peritos que testificaron sobre el particular. Al actuar de esta forma errada, el foro de instancia no ponderó todos los factores pertinentes relativos al asunto de la custodia de Sofía Anabelle como era debido.

Es menester reiterar aquí lo que señalamos hace más de dos décadas con respecto a cómo debe hacerse la determinación judicial en casos de custodia de menores:

> "Ningún factor es de por sí decisivo. Hay que sopesarlos **todos** para juzgar de qué lado se inclina la balanza y al menos aproximarse al logro de la solución más justa en un asunto de tan extrema dificultad." Marrero Reyes v. García Ramírez, supra, a la pág. 106. (Enfasis suplido.)

En una de las vistas de este caso ante el foro de instancia, el Dr. Agustín García, psicólogo del tribunal, testimonió lo siguiente, inter alia:

> "Mi recomendación es que no se alteren las condiciones y escenarios actuales en los que Sofía se ve insertada y continua desarrollándose. El escenario de este último año ha probado ser uno de mucho beneficio y utilidad para su desarrollo emocional, intelectual y físico de la niña. ...

> ...a mí me preocupa el hecho de que a ella la puedan trasladar de momento a otro lugar y ella no tenga manera de protegerse y proteger a la niña y pueda ser llevada lejos de las circunstancias presentes que han probado ser muy saludables para la niña...

> ...alteraría el balance de la ecología tan perfecta en el cual está insertada la niña en este momento y que ha probado ser de mucho beneficio para

la niña... la estaríamos sacando del contexto educativo familiar en el cual está insertada en este momento. ...

...La niña es miembro de una familia puertorriqueña... donde existen tres generaciones juntas, está la familia de los abuelos, padre e hijos. Es una familia donde ella tiene mucho, mucho apoyo emocional... pues, varias personas están pendientes de ella. ...

...O sea, si nuestro objetivo es velar por los mejores intereses de esa menor y velar por el desarrollo emocional de esa menor, no [debemos tomar] esa decisión de sacarla de ahí. ... O sea, ... removerla de este ambiente no es decidir en los mejores intereses de esa niña. Será en los mejores [intereses] de algún otro adulto, pero de la niña no."

El foro de instancia descartó este crucial testimonio sin fundamento adecuado alguno. No sopesó adecuadamente los importantes factores a que alude el testimonio referido. Le dio excesiva importancia al factor relativo a la respectiva facilidad de los padres para viajar para relacionarse con la menor. No es el derecho de los padres a relacionarse con la menor el criterio decisivo en los casos de custodia, sino el mejor bienestar de la menor.

Resolvemos, pues, que del foro de instancia cometió un error manifiesto al no darle peso a la recomendación unánime de todos los peritos que testificaron, **incluyendo los dos peritos del propio tribunal**, de que el hogar paterno era más apto que el materno para la custodia de la menor. Erró, por ende, al concederle la custodia a la madre, cuando el cuadro circunstancial en el caso de autos de modo patente inclina la balanza a favor de otorgarle la custodia al padre. Erró también el foro apelativo al confirmar el referido dictamen de instancia.

Para concluir, debemos advertir que si en cualquier momento cambian las circunstancias que dieron lugar a esta determinación sobre la custodia de Sofía Anabelle, la parte interesada podrá recurrir al foro de instancia y solicitar la modificación que estime pertinente. Sánchez Cruz v. Torres Figueroa, supra, a la pág. 432.


IV

Por los fundamentos expuestos, se dictará sentencia para dejar sin efecto los dictámenes pertinentes del foro de instancia y del Tribunal de Circuito de Apelaciones en este caso. Se devolverá el caso al foro de instancia para que disponga lo que sea procedente con respecto a los derechos de

la madre para relacionarse con su hija mientras ésta continúe bajo la custodia del padre, ordenada aquí.


                              JAIME B. FUSTER BERLINGERI
                                   JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos A. Maldonado Mir

    Demandante-Peticionario

       vs.                 CC-1999-923        Certiorari

Rossanne M. Burris
T/C/C Rossane Marie Schade
y como Rossanne M. Maldonado

    Demandada-Recurrida

SENTENCIA

San Juan, Puerto Rico, a 8 de mayo de 2001.

Por los fundamentos expuestos, en la Opinión que antecede, la cual se hace formar parte de la presente, se dicta sentencia para dejar sin efecto los dictámenes pertinentes del Tribunal de Primera Instancia, Sala Superior de San Juan, y del Tribunal de Circuito de Apelaciones, Circuito Regional I – San Juan, en este caso.

Se devuelve el caso al foro de instancia para que disponga lo que sea procedente con respecto a los derechos de la madre para relacionarse con su hija mientras ésta continúe bajo la custodia del padre, ordenada aquí.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Naveira de Rodón disiente con opinión escrita, a la cual se une el Juez Asociado señor Corrada del Río. El Juez Asociado señor Hernández Denton disiente sin opinión.

                            Isabel Llompart Zeno
                              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos A. Maldonado Mir

    Peticionario


    v.                             CC-1999-923

Rossanne M. Burris T/C/C
Rossanne Marie Schade
y como Rossanne Maldonado

    Recurrida


Opinión disidente emitida por la Juez Asociada señora NAVEIRA DE RODÓN a la cual se une el Juez Asociado señor CORRADA DEL RÍO


San Juan, Puerto Rico, a 8 de mayo de 2001


Este caso nos brinda la oportunidad de analizar y señalar los factores que los tribunales deben tomar en consideración al adjudicar la custodia de un menor **cuando tanto el ambiente del padre como el de la madre ofrecen un óptimo bienestar al menor pero haya considerable distancia entre éstos**. Contrario a la mayoría, estimamos que en vez de escudriñar factores que puedan servir de pesos y contrapesos en la balanza para la determinación de la custodia, **para el caso antes mencionado**, se debe buscar una solución que propicie y perpetúe, en lo posible, la relación del menor con ambos ambientes.

Precisamente, esa solución es la óptima para el bienestar del menor y, por ende, el fin que debe perseguir el tribunal.

Además, contrario a lo que trata de demostrar la mayoría, de la totalidad del expediente no surgen circunstancias extraordinarias, indicio de pasión, prejuicio, parcialidad o error manifiesto que justifiquen la intervención de este Tribunal con la credibilidad dirimida por el Tribunal de Primera Instancia y la deferencia que a esos efectos se le debe a éste. Véase, Pérez v. Col. Cirujanos Dentistas de P.R., 131 D.P.R. 545, 562 (1992); Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985).


I


La menor cuya custodia se va a adjudicar nació en el estado de Illinois el 29 de noviembre de 1994, producto de la relación entre el Dr. Carlos Maldonado Mir (en adelante Dr. Maldonado o peticionario) y la Dra. Rossanne M. Schade (en adelante Dra. Schade). Luego de un tiempo, la pareja vino a tratar de establecerse en Puerto Rico, donde la familia del peticionario residía. Debido a desaveniencias habidas en su matrimonio, el 29 de mayo de 1995 la Dra. Schade se fue con su hija a casa de su hermana en el estado de Oregón, donde permaneció hasta agosto de 1995. Luego se trasladó a casa de su padre en el estado de Washington hasta enero de 1996. En esa fecha la Dra. Schade y la menor se mudaron de casa del padre de la doctora a un apartamento en Seattle, Washington. Desde el momento que la Dra. Schade y su hija se fueron de Puerto Rico hasta abril de 1996, hubo múltiples comunicaciones telefónicas entre el Dr. Maldonado y ésta, y se reunieron madre, padre e hija, en dos ocasiones. La primera fue en septiembre de 1995, cuando la doctora y la menor vinieron a Puerto Rico por tres semanas, y la segunda cuando el Dr. Maldonado visitó la ciudad de Seattle en abril de 1996. Debido a que no se divisaba una reconciliación entre los padres de la menor, a pesar de éstos haber tratado, y a problemas económicos

que afrontaban madre e hija, la Dra. Schade decidió ingresar como dentista pediátrica a las Fuerzas Armadas en septiembre de 1996.

En diciembre de 1996, más de año y medio después de que la Dra. Schade y su hija se fueran de Puerto Rico, el peticionario radicó demanda de divorcio por la causal de abandono y solicitó la custodia de su hija aduciendo que la madre sacó a la menor de Puerto Rico sin autorización suya. Ante esta situación, el tribunal de instancia adjudicó la custodia "pendente lite" al padre de la menor. Ésta fue trasladada a Puerto Rico en mayo de 1997.

Luego de estudiar detenidamente los hechos del caso y escuchar a las partes, el foro de instancia determinó que la madre no se había desaparecido con su hija y que la supuesta falta de autorización del padre para que la madre se la llevara consigo no avalaba esta conclusión.[1] Las múltiples conversaciones telefónicas, las visitas esporádicas para tratar la reconciliación y los lugares familiares (la casa de la hermana y del padre de ésta) donde se quedaron la Dra. Schade y su hija debilitaron sustancialmente las alegaciones del padre. Determinó el foro de instancia que la custodia debía ser adjudicada a favor de la madre debido a que, al ser ambos ambientes óptimos para el bienestar de la menor, el de la madre era la mejor opción para propiciar y perpetuar la relación de la menor con ambos padres.[2]

El tribunal de instancia le concedió tres (3) días al peticionario para que entregara la menor a su madre. Éste radicó una moción en

---

[1] El tribunal de instancia justificó su fallo preliminar en que sólo tuvo ante sí la versión del peticionario al tomar esta decisión, ya que la madre no compareció a la vista por razones que después explicó. Dicho foro aclaró que la determinación de custodia "pendente lite" respondía a unas circunstancias provisionales: "La menor nunca había sido separada de su madre hasta ese momento.... El Tribunal toma dicha determinación en aquel momento, de que la madre removió a la menor de Puerto Rico sin autorización del padre. Una vez tuvimos la oportunidad de oír a ambas partes este hecho quedó sin fundamento alguno al levantarse entre las alegaciones de la madre y del mismo padre que en efecto, no sólo sabía donde se encontraba la menor sino que además fue a visitarla". Pág. 3 de la Sentencia del Tribunal de Primera Instancia.

[2] Estimó que le era más fácil al padre visitar más a menudo a su hija debido a que su trabajo era más flexible (tenía oficina propia) que el de

auxilio de jurisdicción, junto con un recurso de apelación, ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) solicitando paralizar la orden del tribunal de instancia, y revocar la adjudicación de custodia.

El Tribunal de Circuito paralizó la orden del tribunal de instancia y concedió la custodia "pendente lite" al padre en lo que dilucidaba el recurso. Finalmente, confirmó la determinación de custodia basándose en que del expediente no surgía nada que tildara la actuación del foro de instancia como una parcial, pasional, o prejuiciada y que tampoco se había cometido error manifiesto al aquilatar la prueba. Por lo tanto, se abstuvieron de intervenir con la misma.

## II

**Reiteradamente** hemos expresado que los tribunales apelativos no intervendrán con la apreciación que de la prueba desfilada haya hecho el foro de instancia en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. José Garriga Hijo, Inc. v. Cond. Marbella, P.C. de 31 de octubre de 1997, 97 J.T.S. 129, pág. 118; Monllor v. Soc. de Gananciales, 138 D.P.R. 600, 610 (1995); Levy v. Aut. Edif. Públicos, 135 D.P.R. 382, 400 (1994). Muchas son las razones por las cuales hemos reiterado esta norma, pero una de las más importantes es la oportunidad que tuvo el tribunal de instancia de ver y observar, más allá de los documentos presentados, el comportamiento de los que participan en las vistas. Esta razón es sumamente importante en casos tan difíciles de adjudicar como son los de custodia. El juzgador, como en el caso de autos, tuvo la oportunidad de observar los testimonios de la madre y del padre de

la madre, la cual dependía de que las Fuerzas Armadas le concediera un pase de salida para poder efectuar las visitas.

la menor al igual que el de los peritos. Con estos principios en mente pasemos a analizar el caso que tenemos ante nuestra consideración.

## III

El tribunal de instancia tuvo el beneficio de oír el testimonio de tres peritos que fueron interrogados y contrainterrogados sobre el informe que cada uno de éstos preparó. Uno de los peritos, presentado por el padre peticionario, fue la Dra. Nydia Lucca Irizarry, psicóloga. La Dra. Lucca hizo un informe psicológico del Dr. Maldonado basado en evaluaciones hechas desde el 15 de marzo hasta el 8 de abril de 1997. En dicho informe, la Dra. Lucca concluyó que el Dr. Maldonado "no presenta ningún impedimento y está capacitado cabalmente para ejercer la custodia de su hija". La Dra. Lucca también rindió un informe psicológico de la menor. A ésta le hizo evaluaciones desde el 7 de noviembre de 1997 hasta el 31 de octubre de 1998. Las estrategias utilizadas para evaluar a la menor incluían: entrevistas con la menor, con el padre y con la abuela, y visitas al hogar paterno. En el informe concluyó que la menor presentó un historial de desarrollo normal y que "el padre y su núcleo de apoyo proveen a la menor un ambiente óptimo para su desarrollo integral saludable"; y recomendó que la menor permaneciera junto al padre y que se mantengan las relaciones materno-filiales.

La Dra. Lucca testificó sobre el contenido del informe, sosteniendo lo expresado en el mismo. Contrario a lo que aduce la mayoría, el tribunal de instancia tomó en consideración lo expresado en la silla testifical por la Dra. Lucca, después de oírla, simplemente no le concedió credibilidad concluyente a su testimonio o informe. Recordemos que reiteradamente hemos expresado que el tribunal puede adoptar su propio criterio aun cuando la prueba pericial resulte técnicamente correcta. Dye-Tex Puerto Rico v. Royal Insurance Co., Op. de 27 de marzo de 2000, 2000 J.T.S. 67, pág. 933-934; Culebra

Enterprises Corp. v. E.L.A., Op. de 31 de octubre de 1997, 97 J.T.S. 128, pág. 108; Prieto v. Maryland Casualty, Corp., 98 D.P.R. 594, 623 (1970).

Por ende, esta actuación del tribunal no demostró alguna circunstancia extraordinaria o indicio de parcialidad, error manifiesto, pasión o prejuicio. Más bien ésta resulta razonable en vista que la Dra. Lucca emitió una recomendación sin tener el beneficio de conocer a la madre o el ambiente que ésta pudiera ofrecer a la menor. Lo que sí consideró pertinente el tribunal del testimonio de esa perito fue que el ambiente paterno era beneficioso para la menor.

El segundo perito, presentado por el peticionario, fue una trabajadora social.[3] Ésta testificó que su recomendación era que la menor permaneciera bajo la custodia del padre. Ante la pregunta de por qué, ésta respondió: **"porque no hemos podido evaluar el hogar materno"**. Nuevamente, el tribunal valoró el testimonio pericial y, en clara ausencia de parcialidad o prejuicio, le dio el peso que estimó ameritaba.

El tercer perito fue el Dr. Agustín García, psicólogo. Éste fue el perito del tribunal. El Dr. García emitió un informe cuya metodología incluyó: entrevistas con la Dra. Schade y observaciones sobre la interacción entre madre e hija, entrevistas con el Dr. Maldonado y observaciones sobre la interacción entre padre e hija, y entrevistas con la abuela paterna de la menor. En su informe éste expresó que tanto la madre como el padre están capacitados para dar mucho "cariño, apoyo y ser un buen modelo para su hija". La menor mostró una excelente relación emocional tanto con el padre como con la madre. Concluyó que "este caso no se trata de padres y otras personas incompetentes". Añadió que el ambiente y los escenarios en los que se está criando la menor cumplen con los criterios más importantes

---

[3] A pesar de que los informes de los otros dos peritos se presentaron en evidencia, en el expediente no aparece que el de la trabajadora social se haya presentado, esto a pesar que en la silla testifical ella hizo referencia al mismo.

señalados por los psicólogos pediátricos, psiquiatras de niños, y otros especialistas del comportamiento de niños. Su recomendación fue que la menor se quedara con el padre debido a los cambios que pueden presentarse en la vida típica de las Fuerzas Armadas. Sin embargo, sujetó esta recomendación a que la madre permanezca con ese tipo de vida. De cambiar las circunstancias antes mencionadas de la madre, "se puede volver a evaluar la situación para contemplar la posibilidad de otras alternativas que redunden en beneficio de" la menor.

El tribunal de instancia tampoco tomó a la ligera el testimonio de este perito. De hecho, el tribunal le dio credibilidad al testimonio del perito en cuanto a la capacidad óptima de cada uno de los padres para asumir la custodia de la menor, y le dio gran importancia al hecho de que la madre estuviera en las Fuerzas Armadas.[4] El tribunal, luego de analizar la totalidad de la prueba y dirimir credibilidad, no coincidió con la interpretación del perito en cuanto al efecto que tenía ser parte de las Fuerzas Armadas. De hecho, utilizó esa información para determinar que el bienestar óptimo de la menor estaba con la madre, pues era de esa manera que podía sostener con mayor facilidad las relaciones con ambos ambientes el del padre y el de la madre. Como vemos, no existe prejuicio, pasión o error manifiesto alguno en este razonamiento.[5]

---

[4] Cabe señalar que de la evidencia presentada por la madre, y del propio testimonio de la abuela paterna, el padre y los peritos, surge que las bases militares estadounidenses presentan buenas oportunidades para criar a un menor, i.e. buen cuido de niños, facilidades de entretenimiento y de educación para éstos, etc.

[5] Anteriormente analizamos la credibilidad dirimida por el tribunal entre la madre y el padre ante el argumento de éste sobre su falta de autorización para que la menor estuviera con la madre y la desaparición intencional de éstas. El tribunal, además, estimó pertinente mencionar en su sentencia que mientras el padre sabía del paradero de la madre y su hija, éste no contribuyó o no mostró interés en contribuir a aliviar algunos pesares económicos que afrontaba su hija. La madre de ésta, durante ese tiempo, sufragó a duras penas la manutención de su hija, y eventualmente, ante las crecientes deudas (algunas eran de cuando los padres estaban juntos) tuvo que declararse en quiebra. Recordemos que para ese entonces no existía directriz del tribunal en cuanto a la custodia o alimentos, por lo que el padre no se puede escudar con decir que la hija no estaba físicamente con él. Era también su deber. Como cuestión de hecho fue la situación económica

Contrario a lo que la mayoría de este Tribunal expresa, el foro de instancia sí consideró el beneficio que podía aportar una familia extendida, de hecho, ese fue uno de los elementos que consideró para aquilatar los beneficios del ambiente paterno, **pero tomó como factor de mayor importancia el hecho que al presentar ambos ambientes bienestar para la menor, y éstos estar distanciados, se debe buscar una solución que propicie o perpetúe en lo posible el que la menor se pueda relacionar en ambos ambientes**. Esta solución gira en torno al bienestar óptimo de la menor, no de los adultos.

En conclusión, no hay indicio alguno para que este Tribunal intervenga con la aquilatación de la prueba por parte del foro de instancia. Éste, después de un minucioso y cuidadoso estudio de la prueba testifical y documental, estimó que ante un cuadro donde el bienestar de la menor se salvaguarda tanto en el ambiente paterno como en el materno, había que buscar una solución que optimizara dicho bienestar. O sea, se debía perpetuar, propiciar y fomentar la relación de la menor con ambos ambientes, especialmente cuando éstos estaban considerablemente distanciados. En el caso de autos, el ambiente que propicia la situación antes señalada es el de la madre, ya que a la madre le es más difícil viajar a Puerto Rico para relacionarse con la menor que al padre irla a ver a Inglaterra.[6]

También nos mueve a tomar en consideración para disentir, el hecho que la madre termina su servicio militar en junio de 2001. La Dra. Schade ya solicitó la licencia como dentista en el estado de Texas, de donde tomó y aprobó la reválida. En junio se mudará permanentemente a Corpus Christi, Texas.

Finalmente, queremos recalcar y reafirmar lo expresado por la mayoría de que en situaciones como ésta, donde el bienestar del menor

---

creada por la falta de aportación del padre lo que obligó a la madre a ingresar a las Fuerzas Armadas, en busca de estabilidad económica para criar a su hija.

[6] El foro de instancia recalcó tanto en este equilibrio entre los propuestos ambientes que dictaminó que la madre, al tener la custodia, debía

se salvaguarda tanto con el padre como con la madre, no debe adjudicársele la custodia a ésta última por el solo hecho de ser la madre.  En el caso de autos, el tribunal de instancia tuvo un buen fundamento para adjudicar la custodia que, casualmente y fuera de toda relación con el sexo de una persona, fue a favor de la madre.

Por los fundamentos antes expuestos, disentimos.  Confirmaríamos el dictamen del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones.


Miriam Naveira de Rodón
Juez Asociada

---

aportar la mitad de los gastos de los viajes que fuesen necesarios para sostener las relaciones paterno-filiales.