Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| RAFAEL MATOS BERRÍOS<br><br>Recurrido<br><br><br>v.<br><br><br>SARA CANTRES NEGRÓN<br><br>Peticionaria | KLCE202400315 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Relaciones de Familia y Menores de Bayamón<br><br>Caso núm.:<br>D CU2017-0068<br><br>Sobre:<br><br>Custodia |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz, la jueza Mateu Meléndez y la jueza Prats Palerm

**Figueroa Cabán, Juez Ponente**

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 27 de marzo de 2024.

Comparece la señora Sara Cantres Negrón, en adelante la señora Cantres o la peticionaria, quien nos solicita que revoquemos la *Orden* emitida el 9 de febrero de 2024 y notificada el día 13 del mismo mes y año. Mediante la misma, el Tribunal de Primera Instancia, Relaciones de Familia y Menores de Bayamón, en adelante TPI, declaró no ha lugar la *Moción en Cumplimiento de Orden* de la peticionaria.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto de *Certiorari.*

-I-

En el contexto de un pleito sobre custodia, el **25 de agosto de 2023**, el TPI concedió la custodia monoparental de Y.Y.M.C., en adelante el menor, a su

padre, el señor Rafael Matos Berríos, en adelante el señor Matos o el recurrido.[1]

En desacuerdo, el **14 de septiembre del mismo año**, la señora Cantres presentó una solicitud de reconsideración, en la que solicitó el restablecimiento de las relaciones maternofiliales, un nuevo estudio social y una nueva vista sobre impugnación de informe.[2]

Por su parte, el **13 de octubre de 2023**, el TPI declaró sin lugar la solicitud de reconsideración.[3]

Nuevamente, con fecha de **7 de febrero de 2024**, la señora Cantres compareció ante el foro recurrido mediante *Moción en Cumplimiento de Orden*, mediante la misma, arguyó que resultaba necesario referir el pleito de epígrafe a la unidad social, "conforme a la situación actual y a la superación de las partes", porque tanto ella como el señor Matos "tuvieron custodia compartida sin problemas por varios años"; la determinación de la custodia monoparental a favor del padre retirado se debe a un discrimen contra la madre por ejercer como policía; y los hallazgos del informe en que se basó el TPI para otorgar la custodia monoparental son del 2022, por lo que "no guardan relación con la realidad de 2024".[4]

Tras evaluar la *Moción en Cumplimiento de Orden*, el TPI determinó lo siguiente:

> No Ha Lugar. No se ha colocado al Tribunal en posición de determinar que ha ocurrido un cambio suficiente en la calidad del cuido que el menor ha estado recibiendo o la existencia de un riesgo o amenaza para el bienestar o la integridad del menor que justifique un cambio en la custodia otorgada el 25 de agosto de 2023, es decir, hace tan solo cinco (5) meses y trece (13) días.[5]

---

[1] Apéndice de la peticionaria, págs. 95-105.
[2] *Id.*, págs. 106-117.
[3] *Id.*, pág. 118.
[4] *Id.*, págs. 3-9.
[5] *Id.*, págs. 1-2.

Insatisfecha, la peticionaria presentó una *Petición de Certiorari*, en la que alegó que el TPI cometió los siguientes errores:

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA SOLICITUD PRESENTADA POR LA DEMANDADA-RECURRENTE PARA LA REEVALUACIÓN DE LA DETERMINACIÓN DE CUSTODIA Y, EN CONSECUENCIA, CON SU DETERMINACIÓN, REFRENDAR TÁCITAMENTE LAS DETERMINACIONES DE CARÁCTER CONTRADICTORIO Y DISCRIMINATORIO EFECTUADAS Y/O ACOGIDAS POR EL HONORABLE TRIBUNAL EN SU RESOLUCIÓN PREVIA DEL 25 DE AGOSTO DE 2023.

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA SOLICITUD PRESENTADA POR LA DEMANDADA-RECURRENTE Y DESCARTAR, DE PLANO, LOS ARGUMENTOS DE ALIENACIÓN PARENTAL, PREJUICIO Y DISCRIMEN POR ESTA ESBOZADOS.

Conforme la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, este Tribunal puede "prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos … [ello] con el propósito de lograr su más justo y eficiente despacho…". En consideración a lo anterior, eximimos a la parte recurrida de presentar su alegato en oposición.

Luego de evaluar el escrito de la peticionaria, estamos en posición de resolver.

**-II-**

**A.**

Como cuestión de umbral, la Regla 52.1 de Procedimiento Civil establece el alcance de la revisión discrecional de las resoluciones u órdenes interlocutorias emitidas por el Tribunal de Primera Instancia en los siguientes términos:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones

sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia[…].[6]

**1.**

Rebasado el umbral establecido en la Regla 52.1 de Procedimiento Civil, *supra*, corresponde a este tribunal intermedio determinar si procede revisar la determinación interlocutoria recurrida.

A esos efectos, el auto de *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior.[7] Distinto al recurso de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional, por tratarse de ordinario de asuntos interlocutorios.[8] Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera.[9]

Por su parte, la Regla 40 del Reglamento de este Tribunal establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Sobre el particular dispone:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

---

[6] Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.
[7] *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *García v. Padró*, 165 DPR 324, 334 (2005).
[8] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 847; *Medina Nazario v. McNeil Healthcare LLC*, *supra*, pág. 729; *García v. Padró*, *supra*, pág. 334.
[9] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 847; *Municipio v. JRO Construction*, 201 DPR 703, 711-712 (2019); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

B.      Si la situación de hechos planteada es la más indicada para el análisis del problema.

C.      Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D.      Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E.      Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F.      Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G.      Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[10]

**B.**

El concepto de "determinación de custodia (custody determination)… se define como la 'sentencia, decreto u otra orden de un tribunal, que dispone de quién es la custodia del menor o cuándo se le harán las visitas, e incluye las órdenes permanentes, temporeras, iniciales, y modificaciones'".[11]

Ahora bien, existen diferentes tipos de custodia. La custodia compartida es la obligación de ambos progenitores de ejercer directa y totalmente todos los deberes y funciones que conlleva la patria potestad de los hijos, relacionándose el mayor tiempo posible y brindándoles la compañía y atención que se espera del progenitor responsable.[12] Sin embargo, en alguno casos, la custodia puede ser exclusiva, es decir, se puede asignar a un solo progenitor en las siguientes circunstancias:

---

[10] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 848; *Municipio v. JRO Construction*, *supra*; 4 LPRA Ap. XXII-B, R. 40.
[11] *Perron v. Corretjer*, 113 DPR 593, 601 (1982).
[12] Art. 602 de la Ley Núm. 55-2020 (31 LPRA sec. 7281).

(a) mientras se ventila el proceso de divorcio o de nulidad del matrimonio;

(b) luego de decretada la disolución o anulado el matrimonio; o

(c) cuando hay diferencias irreconciliables o reiteradas entre los progenitores que afectan significativamente la crianza razonada, responsable y efectiva del hijo.

En estos casos no puede entorpecerse o prohibirse el contacto del otro progenitor con su hijo, aunque puede regularse en las circunstancias y del modo que autoriza este Código.[13]

El Tribunal Supremo de Puerto Rico ha establecido que en toda controversia sobre la custodia legal de un menor de edad, el tribunal tendrá como su único norte y propósito principal el bienestar y los mejores intereses del menor.[14] Esto se puede aquilatar mediante una evaluación social que tome en consideración los siguientes factores, a saber: (1) la preferencia del menor, su sexo, edad, y salud mental y física; (2) el cariño que puede brindársele por las partes en controversia; (3) la habilidad de aquellas para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; (4) el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; (5) la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y (6) la salud psíquica de todas las partes.[15]

En lo pertinente, así como el *Código Civil de Puerto Rico de 2020*, la *Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia*

---

[13] Art. 606 de la Ley Núm. 55-2020 (31 LPRA sec. 7285).
[14] *Jusino González v. Norat Santiago*, 211 DPR 855, 864 (2023); *Maldonado v. Burris*, 154 DPR 161, 167 (2001); *Ortiz v. Meléndez*, 164 DPR 16, 26-27 (2005). Véase, además, *Sánchez Cruz v. Torres Figueroa*, 123 DPR 418, 431 (1989); *Nudelman v. Ferrer Bolívar*, 107 DPR 495, 508 (1978); *Centeno Alicea v. Ortiz*, 105 DPR 523, 527 (1977).
[15] *Nudelman v. Ferrer Bolívar*, *supra*, pág. 511. (Citas omitidas).

dispone los siguientes criterios en toda determinación de custodia:

1.  La salud mental de ambos progenitores, así como la del hijo(a) o hijos(as) cuya custodia se va a adjudicar.

2.  El nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores y si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar.

3.  La capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras.

4.  El historial de cada progenitor en la relación con sus hijos, tanto antes del divorcio, separación o disolución de la relación consensual, como después del mismo.

5.  Las necesidades específicas de cada uno de los menores cuya custodia está en controversia.

6.  La interrelación de cada menor, con sus progenitores, sus hermanos y demás miembros de la familia.

7.  Que la decisión no sea producto de la irreflexión o coacción.

8.  Si los progenitores poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente.

9.  Los verdaderos motivos y objetivos por los cuales los progenitores han solicitado la patria potestad y custodia compartida.

10. **Si la profesión, ocupación u oficio que realizan los progenitores impedirá que funcione el acuerdo efectivamente.**

11. Si la ubicación y distancia de ambos hogares perjudica la educación del menor.

12. La comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos.

13. Analizará la presencia de la enajenación parental, o cualesquiera otras razones que pudieran ocasionar la resistencia del menor para relacionarse con sus padres. La enajenación parental se refiere a la obstaculización por parte de uno de los progenitores de las relaciones filiales de sus hijos o hijas, menores de edad, con el otro progenitor, mediante el uso de diferentes estrategias, con el propósito de transformar o adoctrinar la conciencia de sus hijos o hijas, a los fines de denigrar,

impedir, obstruir o destruir sus vínculos con el otro progenitor y el menor de edad presenta pensamientos o sentimientos de rechazo hacia el otro progenitor; demuestra actitudes negativas hacia este o si, en efecto, se ha afectado el vínculo afectivo entre el menor y el otro progenitor. Todas las actuaciones que surgen del presente inciso deben ocurrir de forma repetitiva de modo que constituyan un patrón y no basado en hechos aislados.

14. Cualquier otro criterio válido o pertinente que pueda considerarse para garantizar el mejor bienestar del menor.[16]

En el proceso de análisis y ponderación de estos factores, participan los peritos de las Salas de Relaciones de Familia por medio de la Clínica de Diagnóstico de la Rama Judicial. Aquellos pueden ser Trabajadores Sociales, Sicólogos Clínicos y/o Siquiatras, que realizan las evaluaciones sociales forenses necesarias a las partes y a los menores.[17] No obstante, en el proceso decisional del foro sentenciador, las recomendaciones sobre custodia de los Trabajadores Sociales constituyen uno de los factores a considerar, más no el único.[18]

Así pues, ningún factor por sí sólo es decisivo o determinante en el proceso de toma de decisiones.[19] Por lo tanto, se insiste en que "[n]o es el derecho de los padres a relacionarse con la menor el criterio decisivo en los casos de custodia, sino **el mejor bienestar del menor**".[20]

Por tal razón, en los casos en que se demuestre que alguno de los progenitores no se encuentra capacitado para ostentar la custodia, los tribunales, actuando en

---

[16] Art. 7 de la Ley Núm. 223-2011 (32 LPRA sec. 3185). (Énfasis suplido). Véase, además, Art. 604 de la Ley Núm. 55-2020 (31 LPRA sec. 7283).
[17] *Muñoz Sánchez v. Báez de Jesús*, 195 DPR 645, 652 (2016).
[18] Art. 8 de la Ley Núm. 223-2011 (32 LPRA sec. 3186).
[19] *Marrero v. García*, 105 DPR 90, 105 (1976).
[20] *Maldonado v. Burris*, *supra*, pág. 168. (Énfasis suplido).

beneficio de los mejores intereses de los menores, no la concederá. No obstante, los tribunales deben estar atentos a cualquier actuación frívola e infundada de alguno de los progenitores, dirigida a impedir que el otro progenitor disfrute de la custodia compartida, aun cuando se encuentre capacitado para ello.[21]

## -III-

Para la peticionaria, el TPI erró al negarse a "reatender" lo concerniente a la custodia del menor. Ello obedece a que la determinación recurrida constituye "una situación prejuiciada, discriminatoria y hasta punitiva" hacia la señora Cantres, por razón de la profesión que ejerce, a saber, la de policía. En consideración a lo anterior, solicita que se revoque la resolución recurrida y se autorice la reevaluación y adjudicación de la custodia en este caso.

Por tratarse de una controversia en un caso sobre relaciones de familia, tenemos facultad para atender la determinación interlocutoria en cuestión.

Sin embargo, luego de revisar cuidadosamente el trámite ante nuestra consideración, declinamos intervenir con la resolución recurrida por las siguientes dos razones. Primero, la resolución recurrida no es contraria a derecho, Regla 40 (A) del Reglamento del Tribunal de Apelaciones, *supra*. Segundo, la etapa del procedimiento en que se presenta el recurso no es la más propicia para su consideración. Regla 40 (E) de nuestro Reglamento, *supra*.

---

[21] Art. 4 de la Ley Núm. 223-2011 (32 LPRA sec. 3182).

En fin, no encontramos ningún otro fundamento al amparo de la Regla 40 de nuestro Reglamento que justifique la expedición del auto solicitado.

**-IV-**

Por los fundamentos expresados, se deniega la expedición del auto de *Certiorari.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones