Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| MARÍA DEL CARMEN MARTÍNEZ PÉREZ<br><br>Demandante - Apelada<br><br>v.<br><br>MIGUEL ÁNGEL LÓPEZ MINER<br><br>Demandado – Apelante | KLAN202400483 | Apelación procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso núm.: GB2023RF00014 (4001)<br><br>Sobre: Divorcio-Ruptura Irreparable |
|---|---|---|

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de mayo de 2024.

El Tribunal de Primera Instancia ("TPI") acogió la recomendación de un informe social a los efectos de que dos menores, nacidos en el 2015 y 2017, sean entregados por el padre a la madre los domingos en la noche. Según se explica a continuación, concluimos que procede confirmar lo actuado por el TPI, pues (i) el planteamiento del padre, a los efectos de que se le debió permitir la entrega de los menores en la escuela, los lunes en la mañana, se presentó luego de la fecha establecida por el TPI y, (ii) de todas maneras, el padre no explicó cómo lo pretendido incide sobre el mejor bienestar de los menores.

I.

El Sr. Miguel A. López Miner (el "Padre") y la Sa. María del Carmen Martínez Pérez (la "Madre") procrearon durante su matrimonio a dos menores de edad: una niña, ESLM, quien al momento tiene ocho (8) años, y un niño, MALM, de seis (6) años (los "Hijos").

En marzo de 2023, el TPI emitió la Sentencia de divorcio. En cuanto a la custodia, el TPI dispuso que la Madre ejercería la custodia provisional de los Menores y la patria potestad sería compartida entre ambos progenitores.

También, el TPI fijó provisionalmente las relaciones paternofiliales en fines de semana alternos, "recogiendo el padre a la menor y al menor a la salida de la escuela y entregándoles en el hogar materno el domingo a las 6:00 pm. Asimismo, todos los miércoles el padre recogerá a la menor y al menor a la salida de la escuela y les entregará en el hogar materno a las 6:00 pm".

Durante el proceso de divorcio, las partes acordaron la pensión alimentaria de los niños. Además, el TPI refirió el caso a la Unidad Social para que una Trabajadora Social realizara el correspondiente estudio sobre patria potestad, custodia compartida o monoparental y relaciones filiales.

El 5 de marzo de 2024, la Trabajadora Social, Sa. Aida N. Santiago Soto, presentó una *Moción de la Unidad Social* con el Informe Social anejado (el "Informe") el 5 de marzo de 2024. El Informe recomendó, en lo esencial, que la madre tuviese la custodia de los Hijos, y que el Padre se mantuviese recogiendo a los Hijos en la escuela los miércoles, devolviéndolos a la Madre más tarde ese día, y recogiendo a los Hijos en la escuela en viernes alternos, devolviéndolos a la Madre los domingos a las 6:00pm.

El **6 de marzo**, el TPI notificó una *Resolución y Orden*, mediante la cual concedió a las partes un término de **veinte (20) días** para mostrar causa por la cual no debía acoger las recomendaciones del Informe. Además, se les apercibió que "de no comparecer por escrito durante dicho término, este Tribunal podrá dictar Sentencia/Resolución conforme a las recomendaciones del Informe Social, sin más citarles ni oírles."

Ninguna de las partes compareció dentro del término concedido por el TPI, el cual venció el **26 de marzo** (martes).

No obstante, casi una semana luego (**1 de abril**), el Padre presentó una *Moción para Informar Posición Sobre Informe Social.* En síntesis, informó que acogería las recomendaciones del Informe, excepto que solicitó que le permitiesen "tener a los menores hasta el lunes en la mañana en los fines de semana alternos." El Padre consignó que no anunciaría perito, pero solicitó una vista para demostrar que "debe permitírsele" devolver los Hijos los lunes en la mañana, en vez de los domingos a las 6:00pm.

El 2 de abril, el TPI notificó una *Resolución* (la "Sentencia") mediante la cual acogió en su totalidad las recomendaciones del Informe. Razonó que la impugnación del Padre al Informe se presentó de forma tardía.

El 10 de abril, el Padre instó una *Solicitud de Reconsideración*, la cual fue denegada por el TPI mediante una Resolución notificada el 23 de abril.

Inconforme, el 15 de mayo, el Padre presentó el recurso que nos ocupa; plantea que el TPI cometió los siguientes dos (2) errores:

> Primer Error. Erró y abusó de su discreción el TPI al declarar No Ha Lugar la reconsideración y no permitir la impugnación del Informe Social solicitada por el Padre, privándole así de su día en corte.

> Segundo Error: Erró el TPI al no atender la solicitud de impugnación solicitada por el Padre alejándose de la norma reiterada de que en los casos de Familia el mejor bienestar de los menores deber ser el norte que dirija los procesos ante el Tribunal.

De conformidad con lo autorizado por la Regla 7(B)(5) de nuestro Reglamento, resolvemos sin trámite ulterior. 4 LPRA Ap. XXII–B, R. 7(B)(5).

## II.

La determinación de a quién le corresponde la custodia de un menor debe estar precedida de un análisis objetivo y sereno de todos

los hechos que rodean la controversia ante la consideración del magistrado. *Santana Medrano v. Acevedo Osorio*, 116 DPR 298, 301 (1985). El principio cardinal que debe guiar a los tribunales en estos casos es si su decisión redunda en el **mejor bienestar del menor**. *Maldonado v. Burris*, 154 DPR 161, 164 (2001); *Sánchez Cruz v. Torres Figueroa*, 123 DPR 418, 431 (1989). Un tribunal, enfrentado a un litigio donde se dilucida la custodia, patria potestad o las relaciones materno y/o paternofiliales, no puede actuar livianamente. De ahí que debe contar con la información más completa y variada posible para resolver de forma correcta. *Pena v. Pena*, 164 DPR 949, 959 (2005).

La Ley 223-2011, según enmendada, conocida como Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia, 32 LPRA sec. 3181 *et seq* ("Ley 223"), estableció que, cuando esté en controversia la custodia legal de un menor, los tribunales usarán como criterio rector el bienestar y los mejores intereses del menor. *Nudelman v. Ferrer Bolívar*, 107 DPR 495, 508-511 (1978); *Marrero Reyes v. García Ramírez*, 105 DPR 90, 104 (1976). Dicho criterio es decisivo en los casos de custodia, independientemente del derecho de los padres a relacionarse con el menor. *Maldonado*, 154 DPR a la pág. 168.

Previo a un decreto en torno a la custodia de un menor se deben examinar los siguientes factores:

> […] la preferencia del menor, su sexo, edad y salud mental y física; el cariño que puede brindársele por las partes en controversia; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y la salud psíquica de todas las partes.

*Marrero Reyes,* 105 DPR a la pág. 105.

Por su parte, el Artículo 7 de la Ley 223, 32 LPRA sec. 3185, dispone lo siguiente:

Al considerarse una solicitud de custodia en la que surjan controversias entre los progenitores en cuanto a la misma, el tribunal referirá el caso al trabajador social de relaciones de familia, quien realizará una evaluación y rendirá un informe con recomendaciones al tribunal. Tanto el trabajador social, al hacer su evaluación, como el tribunal, al emitir su determinación, tomarán en consideración los siguientes criterios:

1) La salud mental de ambos progenitores, así como la del hijo(a) o hijos(as) cuya custodia se va a adjudicar.

2) El nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores y si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar.

3) La capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras.

4) El historial de cada progenitor en la relación con sus hijos, tanto antes del divorcio, separación o disolución de la relación consensual, como después del mismo.

5) Las necesidades específicas de cada uno de los menores cuya custodia está en controversia.

6) La interrelación de cada menor, con sus progenitores, sus hermanos y demás miembros de la familia.

7) Que la decisión no sea producto de la irreflexión o coacción.

8) Si los progenitores poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente.

9) Los verdaderos motivos y objetivos por los cuales los progenitores han solicitado la patria potestad y custodia compartida.

10) Si la profesión, ocupación u oficio que realizan los progenitores impedirá que funcione el acuerdo efectivamente.

11) Si la ubicación y distancia de ambos hogares perjudica la educación del menor.

12) La comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos.

13) Analizará la presencia de la enajenación parental, o cualesquiera razones que pudieran ocasionar la resistencia del menor para relacionarse con sus padres. La enajenación parental se refiere a la obstaculización por parte de uno de los progenitores de las relaciones filiales de sus hijos o hijas, menores de edad, con el otro

progenitor, mediante el uso de diferentes estrategias, con el propósito de transformar o adoctrinar la conciencia de sus hijos o hijas, a los fines de denigrar, impedir, obstruir o destruir sus vínculos con el otro progenitor y el menor de edad presenta pensamientos o sentimientos de rechazo hacia el otro progenitor, demuestra actitudes negativas hacia este o si, en efecto, se ha afectado el vínculo afectivo entre el menor y el otro progenitor. Todas las actuaciones que surgen del presente inciso deben ocurrir de forma repetitiva de modo que constituyan un patrón y no basado en hechos aislados.

[...]

14) Cualquier otro criterio válido o pertinente que pueda considerarse para garantizar el mejor bienestar del menor.

Así pues, las unidades sociales de relaciones de familia y asuntos de menores ejercen como función principal ofrecer al juzgador asesoramiento social mediante evaluaciones periciales que permitan tomar decisiones informadas en los casos ante su consideración. *Muñoz Sánchez v. Báez de Jesús*, 195 DPR 645, 651 (2016).

Al hacer una determinación sobre custodia, el TPI deberá tomar en consideración la recomendación del trabajador social. Sin embargo, lo recomendado por el (o la) trabajador(a) social, aunque es uno de los factores a considerar por el tribunal para hacer la determinación, no será el único. El tribunal siempre deberá proteger los mejores intereses de los menores a la luz de todas las circunstancias existentes y, sobre todo, tendrá la obligación de garantizar el **mejor bienestar del (o la) menor**. Véase, Art. 8 de la Ley 223, 32 LPRA sec. 3186.

III.

Al considerar que el Padre no cumplió con el término concedido por el TPI para anunciar si objetaría el Informe, en conjunto con el hecho de que la objeción tardíamente anunciada no incide sobre el mejor bienestar de los Hijos, concluimos que procede confirmar la Sentencia.

En efecto, a pesar de que el TPI específicamente le advirtió a las partes sobre el término que tendrían para objetar el Informe, y a pesar de que se les advirtió que, de no comparecer dentro del término, el tribunal podría acoger las recomendaciones del Informe sin trámite ulterior, el Padre no comunicó su intención de impugnar el Informe sino hasta casi una semana luego de expirado el referido término.

La norma es que el TPI goza de amplia discreción para pautar y conducir la tramitación de los procedimientos ante su consideración. *In re Collazo I*, 159 DPR 141, 150 (2003); *Vives Vázquez u. E.L.A.*, 142 DPR 117, 141-142 (1996); *Molina Avilés v. Supermercado Amigo, Inc.*, 119 DPR 330, 337 (1987). Asimismo, nuestra intervención como foro apelativo en asuntos de manejo de casos del TPI se circunscribe a que se demuestre la existencia de "un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo..." que ocasione un perjuicio sustancial. Véase, *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170 (1992); *ELA v. Asoc. de Auditores*, 147 DPR 669 (1999); *Meléndez v. Caribbean Intl. News*, 151 DPR 649 (2000).

El ejercicio de discreción del TPI, a los efectos de no aceptar la presentación tardía de la objeción, se torna particularmente razonable al considerar la naturaleza insustancial de la objeción del Padre. Adviértase que el Padre no utilizaría perito alguno y únicamente solicita un cambio menor en las relaciones paterno filiales propuestas por el Informe y acogidas por el TPI. Más importante aún, el Padre ni siquiera intenta explicar cómo lo solicitado incidiría sobre el factor más importante a considerar en estos casos: el mejor bienestar de los menores. En vez, en su moción al respecto, el Padre se limitó a aseveraciones genéricas sobre

supuestos defectos en la metodología utilizada para producir el Informe.

IV.

Por los fundamentos que anteceden, se confirma la *Resolución* apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones