Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| KEVIN OMAR MUÑOZ FERNÁNDEZ<br><br>Demandante-Peticionario<br><br>v.<br><br>ZULEYKA RODRÍGUEZ ROSARIO<br><br>Demandados-Recurrida | KLCE202401272 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Civil núm.:<br>E CU2017-0153<br><br>Sobre: Custodia |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rodríguez Flores y el Juez Candelaria Rosa.

Sánchez Ramos, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 19 de diciembre de 2024.

Luego de la correspondiente vista evidenciaria, el Tribunal de Primera Instancia (TPI) autorizó la relocalización de una menor de edad al estado de Alaska, bajo la custodia de su madre. Según se explica en detalle a continuación, por considerar razonable dicha determinación a la luz de la prueba desfilada, declinamos intervenir con la misma.

I.

El Sr. Kelvin Omar Muñoz Fernández (el "Padre") y la Sa. Zuleyka Rodríguez Rosario (la "Madre") procrearon a la menor KZMR[2] (la "Hija" o la "Menor"), quien nació el 11 de febrero de 2014.

En mayo de 2017, el Padre presentó la acción de referencia, mediante la cual solicitó la custodia de la Menor. Luego de varios incidentes procesales, las partes acordaron la custodia compartida de la Menor y presentaron de manera conjunta una *Estipulación Sobre Custodia Compartida*. El 29 de agosto de 2017, el TPI acogió

---

[1] OATA-2024-142 de 13 de diciembre de 2024 donde se designa al Juez Candelaria Rosa en sustitución del Juez Pagán Ocasio.
[2] Al tratarse de una menor de edad, nos referimos a esta por sus iniciales.

la referida *Estipulación,* mediante una *Sentencia* emitida a esos efectos. Se le impuso al Padre una pensión alimentaria mensual de $150.00.

En diciembre de 2018, el Padre solicitó la custodia monoparental de la Menor. En enero de 2019, la Madre se opuso a la solicitud del Padre, solicitó la custodia monoparental de la Menor y autorización para el traslado de la Menor al estado de Alaska, toda vez que allí residía (y aún reside) el Sr. Erick Samuel Rosario Martínez, quien era su compañero sentimental (y ahora es su esposo). El Sr. Rosario es miembro activo y trabaja para la Guardia Nacional en Fort Greely, Alaska.

El TPI ordenó a la Oficina de Relaciones de Familia realizar un informe social en torno a la custodia, relaciones filiales y posible relocalización de la Menor.

Mientras tanto, el Padre se opuso a la solicitud de traslado y de custodia monoparental de la Madre.

La trabajadora social (Sa. María del C. Vega Arroyo o "TS Vega", o la "Trabajadora Social") presentó un *Informe Social Forense* (el "Informe Inicial"). Recomendó que la custodia fuera compartida en las condiciones que hasta ese momento observaban las partes. Destacó los incidentes ocurridos entre las partes, sobre supuesta interferencia de la Madre con las relaciones paternofiliales. Además, puntualizó que la preferencia de la Menor era permanecer en Puerto Rico.

Inconforme, la Madre presentó un *Informe de Impugnación del Informe Social Forense,* el cual fue preparado por el Dr. Fernando Medina Martínez (el "Perito"). En síntesis, el Perito sostuvo que el Informe Inicial era deficiente, poco preciso, parcializado y no cumplía con lo ordenado por el TPI. Además, afirmó que la recomendación de custodia compartida no procede cuando alguno

de los progenitores solicita la relocalización de un menor fuera de Puerto Rico.

El TPI celebró una vista de impugnación del Informe Inicial, luego de lo cual concluyó que el referido informe no brindaba la información necesaria para adjudicar la petición de relocalización y tampoco ofrecía alternativas para las relaciones paternofiliales en caso de que se autorizara el traslado.

En consecuencia, el TPI ordenó a la Trabajadora Social confeccionar un informe social complementario en el cual se debía evaluar la solicitud de relocalización de la Menor, de conformidad con los criterios de la Ley 102-2018, *infra*.

El 25 de marzo de 2021, la Trabajadora Social presentó un *Informe Social Complementario* (el "Informe Complementario"). Recomendó que el Padre ostentara la custodia de la Menor, "de persistir [la Madre en su] intención de establecerse junto a su esposo en Alaska". También propuso el itinerario de las relaciones paternofiliales de otorgarse la custodia a la Madre.

La Madre sometió un informe de su Perito con el fin de impugnar el Informe Complementario. En síntesis, el Perito opinó que el Informe Complementario adolecía de falta de rigurosidad científica, imprecisión, deficiencias metodológicas y actitudes prejuiciadas.

La vista de impugnación fue celebrada los días 10 de agosto y 3 de septiembre de 2021. Declararon la Trabajadora Social y el Perito.

El 30 de octubre de 2024, el TPI notificó una *Resolución* (la "Decisión") mediante la cual concedió la custodia monoparental a la Madre y autorizó el traslado de la Menor a Alaska. El TPI formuló las siguientes determinaciones de hechos:

1. La menor KZMR es hija de las partes en el presente caso.

2. La menor nació el 11 de febrero de 2014 y actualmente tiene 10 años.

3. El caso de epígrafe comenzó como una petición de custodia, patria potestad y pensión alimentaria presentada por el demandante.

4. El 19 de agosto de 2017 este Tribunal emitió *Sentencia* en la cual acogió una estipulación de custodia compartida, sometida por las partes.

5. Se estableció en dicho entonces, una pensión de $150.00 mensuales.

6. El 31 de enero de 2019 la parte demandada presentó una solicitud de relocalización a Alaska, Estados Unidos, donde residía su pareja sentimental, Sr. Eric Samuel Rosario Martínez (en adelante Sr. Rosario Martínez).

7. La dirección de la residencia es: 3070 Placer Lane Delta Junction, Alaska, 9731.

8. El Sr. Rosario Martínez es miembro activo de Alaska National Guard en Fort Greely, Alaska.

9. La parte demandada contrajo matrimonio con el Sr. Rosario Martínez el 25 de abril de 2019.

10. La parte demandada presentó una petición de custodia y traslado de la menor KZMR a Alaska, Estados Unidos. El Tribunal refirió el caso a la Unidad Social y requirió la preparación de un informe social.

11. Mientras transcurría dicho proceso, el demandante acudió al tribunal en varias ocasiones alegando violación e interferencia con las relaciones paternofiliales.

12. Por orden del Tribunal, el 15 de noviembre de 2019 la TS Vega Agosto emitió su *Informe Social Forense.*

13. Para esa fecha la menor cursaba el Kindergarten en la Escuela María T. Delgado de Marcano en San Lorenzo.

14. La trabajadora social de dicha escuela confirmó que la menor no presentaba problema alguno de conducta ni de ausentismo, que siempre estaba aseada, llevaba meriendas y que, ambos padres, asistían al escenario académico.

15. En dicha ocasión, la parte demandada le expresó a la TS Vega Agosto su deseo de reestablecer su vida familiar, de adquirir estabilidad y seguridad, y que, para concretar sus planes debía mudarse a Alaska donde su esposo cumplía con sus compromisos militares.

16. Por su parte, el demandante manifestó su temor en cuanto a que, de concederse la relocalización, perdería el contacto con su hija.

17. El demandante expresó no tener la capacidad económica para costear viajes para visitar a la menor.

18. La menor indicó que no le gustó mucho Alaska cuando lo visitó, que era un poco aburrido, le asustó el viaje, y que le iba a decir a su mamá que se fuera con su esposo, que ella se quedaba con su papá, su esposa y su abuelita.

19. Se corroboró que, de concederse el traslado, la menor asistiría a la escuela *Delta Elementary School*, que contaría con la colaboración de tres (3) maestras que hablaban español.

20. De concederse el traslado, la parte demandada no trabajaría y su esposo sería quien se encargaría de cubrir todos los gastos del hogar con su salario de $6,837.90 mensuales.

21. Ambas estarían cubiertas por el plan médico del esposo de la parte demandada.

22. La TS Vega Agosto recomendó que se continuara con la custodia compartida, en aras de que la niña permaneciera junto a su padre y a su madre durante el tiempo que le correspondiera.

23. El 16 de febrero de 2020 la parte demandada sometió su *Informe de Impugnación del Informe Social Forense* realizado por el Dr. Medina Martínez.

24. El Dr. Medina Martínez planteó que las recomendaciones se alejaban de la Ley del Guía Uniforme para Casos de Relocalización del Padre Custodio, Ley Núm. 102-2018, concluyó que no se evidenció científicamente el efecto nocivo que tendría la relocalización y que la recomendación de una custodia compartida no era aplicable cuando se trataba de un litigio por relocalización.

25. El 12 de marzo de 2020 se celebró *Vista de Impugnación de Informe Social* a la cual comparecieron ambas partes por conducto de sus respectivas representaciones legales, la TS Vega Agosto y el Dr. Medina Martínez.

26. Se resolvió que el informe carecía de un análisis a los efectos de la autorización o no autorización de la relocalización en controversia.

27. En vista de ello, este Tribunal ordenó la preparación de un informe complementario en el que se evaluara la alternativa de orden de relocalización de la menor y se ampliara la investigación en cuanto a los criterios del Artículo 6, incisos (a) y (b) de la Ley Núm. 102-2018.

28. El 21 de abril de 2020 la parte demandada sometió una moción con fotos de la propiedad en la que se planifica residir y de los vehículos de motor que posee su esposo.

29. El 25 de marzo de 2021 la TS Vega Agosto sometió el *Informe Social Complementario.*

30. La parte demandada reiteró la información previamente ofrecida sobre el lugar de residencia y demás, y presentó una propuesta sobre las relaciones paternofiliales.

31. Por su parte, el demandante reiteró sus preocupaciones sobre la posible pérdida de contacto físico y comunicación con la menor alegando que la parte demandada continuaba interfiriendo con las relaciones paternofiliales.

32. En esta ocasión, la menor declaró querer mudarse a Alaska y quedarse con su mamá, pero que no se lo decía a su papá pues le daba miedo y la ponía triste.

33. La TS Vega Agosto expresó que la parte demandada no garantizaba el vínculo filial y afectivo entre padre e hija y que, la imposición de restricciones por parte de la demandada evidenciaba una intención de excluir a la figura paterna de la vida de la menor.

34. Basándose en el reporte de evaluación psicológica realizado por la Dra. Wanda Luciano Ortega, la TS Vega Agosto informó que no se recomendaba el traslado de la menor a Alaska y que existía cierta influencia por parte de la madre hacia la menor para que se entusiasmara con la relocalización.

35. La TS Vega Agosto señaló que la relocalización no tendría un cambio sustancial para la parte demandada porque ésta no trabajaba ni planificaba hacerlo y que en la Isla era donde contaban con una red de apoyo.

36. Además, la TS Vega Agosto proveyó alternativas para las relaciones paternofiliales en caso de que se autorizara la relocalización y, además, relaciones maternofiliales en cao de que la parte demandada se mudara con su esposo a Alaska y el demandante permaneciera con la custodia de la menor.

37. El 13 de julio de 2021 la parte demandada presentó el *Informe de Impugnación del Informe Social Complementario,* preparado por el Dr. Medina Martínez.

38. El Dr. Medina Martínez reiteró sus planteamientos de parcialidad a favor del demandante, arguyó que la parte demandada realizó diligentemente los trámites conducentes a concretar la relocalización de la menor a Alaska y que no se presentó evidencia en cuanto a un impacto significativo en la menor.

39. El 10 de agosto y el 3 de septiembre de 2021 se celebraron las vistas de impugnación del informe complementario.

40. La TS Vega Agosto, bajo juramento, reiteró los hallazgos de su investigación y declaró que plasmó en

el informe su interpretación de las evaluaciones que realizó la Dra. Wanda Luciano Ortega, sicóloga del estado.

41. La TS Vega Agosto reconoció que es un propósito legítimo de la parte demandada el querer reunirse con su esposo.

42. La TS Vega Agosto reconoció que la parte demandada, junto a su esposo, cuenta con la capacidad para suplir las necesidades de la menor, lo que podría redundar en una mejor calidad de vida, aunque no lo plasmó en informe.

43. La TS Vega Agosto afirmó que la menor ha tenido una adaptación positiva a la separación de sus padres.

44. La TS Vega no discutió en su análisis los beneficios de la relocalización a Alaska, ni se expresó en torno al plan de relaciones filiales propuesto por la parte demandada.

45. La TS Vega Agosto tampoco se expresó sobre la situación y/o (sic) capacidad económica del demandante para ir a visitar a la menor.

46. La TS Vega Agosto reiteró que la parte demandada y la menor no tienen apoyo familiar en Alaska, y declaró que ninguna sabe hablar inglés.

47. La TS Vega Agosto señaló que la menor solo se ha relacionado con el esposo de la parte demandada en dos (2) ocasiones.

48. La TS Vega Agosto declaró que, según la Dra. Wanda Luciano Ortega, la menor pudo haber sido manipulada por la parte demandada y su esposo para que aceptara la relocalización a Alaska, aunque, a su vez reconoció que el cambio de opinión de la menor pudo haberse dado por el transcurso del tiempo.

49. Por su parte, el Dr. Medina Martínez declaró bajo juramento que, el informe social no contiene una discusión de todos los criterios establecidos en la Ley Núm. 102-2018, adolece de fallas metodológicas y que presenta parcialidad a favor del demandante.

50. El Dr. Medina Martínez afirmó que la TS Vega Agosto omitió el hecho de que la reunificación de la parte demandada con su esposo con el propósito de una mejor calidad de vida trae beneficios al núcleo familiar.

51. El Dr. Medina Martínez declaró que el informe social no destaca las aportaciones que ha hecho la madre con relación a la menor y que no se discutió el apego de la menor a su madre, la parte demandada.

52. El Dr. Medina Martínez señaló que la menor tiene la capacidad para adaptarse y de aprender inglés.

53. El Dr. Medina Martínez declaró que la menor está acostumbrada a una familia extendida.

54. Sometida la controversia para la adjudicación del Tribunal, no se presentaron más incidentes relacionados a las relaciones paternofiliales.

55. Por acuerdo entre las partes, la menor viajó con la parte demandada a Alaska durante el verano de 2022.

En virtud de las determinaciones de hechos antes expresadas y, en lo pertinente al recurso que nos ocupa, el TPI concluyó lo siguiente (énfasis suplido):

Por todo lo antes expuesto, este Tribunal concluye que el plan de relocalización propuesto por la Sra. Zuleyka Rodríguez Rosario promueve el bienestar y la calidad de vida, para la menor. No surge del expediente sospecha alguna de que la petición de traslado sea arbitraria o caprichosa o sea motivada por algún factor externo al mejor bienestar de la menor. Precisamente, el bienestar de la menor KZMR es lo que nos motiva a favorecer su relocalización y la consecuente custodia monoparental.

**Estamos convencidos de que el mejor bienestar de la menor KZMR amerita la autorización de su relocalización al estado de Alaska para residir con su madre**. Al así autorizarlo, reconocemos que la custodia compartida resulta incompatible, por lo cual asignamos la custodia monoparental de la menor KZMR a la parte demandada, Sra. Zuleika Rodríguez Rosario, una vez se traslade a Estados Unidos, sin perjuicio de las relaciones paternofiliales.

En desacuerdo, el 22 de noviembre, el Padre presentó el recurso que nos ocupa; formula los siguientes señalamientos de error:

Erró el Tribunal de Primera Instancia Sala de Caguas al declarar Ha Lugar la impugnación del informe social forense y Ha Lugar la relocalización de la menor al estado de Alaska Estados Unidos considerando que la relocalización solicitada promueve el mejor bienestar y calidad de vida para la menor.

Erró el Tribunal de Primera Instancia Sala de Caguas al declarar Ha Lugar la impugnación del informe social forense y Ha Lugar la relocalización de la menor al estado de Alaska Estados Unidos considerando un informe social realizado hace más de tres (3) años, que no responde o considera la realidad, circunstancias y preferencia del menor en la actualidad conforme a los parámetros establecidos en la Ley 102-2028 (sic).

Luego de escuchar la regrabación de las vistas de impugnación del Informe Complementario, y con el beneficio del alegato de la Madre, disponemos.

## II.

El principio cardinal que debe guiar a los tribunales en casos como el de referencia es si su decisión redunda en el mejor bienestar del menor. *Maldonado v. Burris*, 154 DPR 161, 164 (2001); *Sánchez Cruz v. Torres Figueroa*, 123 DPR 418 (1989). Un tribunal, enfrentado a un litigio donde se dilucida la custodia, patria potestad o las relaciones materno o paternofiliales, no puede actuar livianamente. De ahí que debe contar con la información más completa y variada posible para resolver de forma correcta. *Pena v. Pena*, 164 DPR 949, 959 (2005).

La Ley 102-2018, 32 LPRA sec. 3371, *et seq.* ("Ley 102"), *Guía Uniforme para Casos de Relocalización del Padre Custodio,* reglamenta lo relacionado con una solicitud de un padre o madre dirigida a la relocalización de su hijo(a) menor a otra jurisdicción. La Ley 102 dispone que el tribunal permitirá una relocalización si se prueba que (32 LPRA sec. 3376(a)):

1. La solicitud no es para impedir la relación del padre no custodio o persona interesada con el menor;
2. Existe una razón válida y determinante para relocalizarse; y
3. Ofrecerá una mejor oportunidad de vida tanto para el padre custodio o tutor como para el menor.

La ley también establece los "factores a considerar al determinar el mejor bienestar del menor" en el contexto de una solicitud de relocalización (32 LPRA sec. 3376(b)):

1. Preferencia del menor en aquellos casos donde tenga derecho a ser oído;
2. Relación del menor con el padre no custodio;

3. Relación del menor con las personas interesadas y la forma en que éstos llevan a cabo su derecho de visita;

4. Periodo de tiempo que el menor lleva residiendo en la residencia principal y los lazos emocionales que lo une a ella;

5. Oportunidades de desarrollo, tanto emocional, como físico y educacional;

6. Impacto que tendrá el traslado en su desarrollo;

7. Disposición del padre custodio o tutor de permitir al otro padre no custodio o persona interesada de ejercer su derecho a visita, relacionarse con el menor y custodia compartida en los casos que aplique;

8. Potencial de cambio en la vida del padre custodio o tutor y del menor;

9. Posibilidad económica del padre no custodio o persona interesada de ejercer su derecho a visita para relacionarse con el menor;

10. Grado de responsabilidad del padre no custodio o persona interesada en sus obligaciones para con el menor;

11. El Tribunal podrá ordenar el realizar un estudio social del área al cual planean mudar al menor. Este estudio, entre otras cosas, deberá incluir un análisis de la criminalidad del área interesada;

12. Lugar donde el menor va a estudiar, nombre e información completa de la escuela: dirección, teléfono, maestro del menor y nombre del director;

13. En caso de que el menor no tenga edad suficiente para asistir a la escuela, nombre del cuido e información completa en el que estará el menor o en caso de que sea una persona particular información completa de la misma;

14. Lugar de trabajo, nombre e información general del padre custodio o tutor legal: teléfono, dirección y nombre del patrono;

15. Información de las personas adicionales al padre custodio o tutor legal con las que vivirá el menor, de ser el caso;

16. Información del casero en los casos donde la residencia sea alquilada;

17. Certificación de empleo o estudios;

18. Se observará la recomendación del trabajador social en cuanto al efecto que esto tendrá en el menor;

19. El seguro médico que tendrá el menor; y

20. Cualquier otro factor que el juzgador entienda necesario, tomando como principio la equidad entre las partes.

III.

Al ejercer nuestra función revisora le debemos deferencia a las determinaciones de hechos que hace el juzgador de primera instancia, en particular a aquellas que descansan sobre su apreciación de la credibilidad de testigos. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-772 (2013); *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011). Es dicho juzgador (en este caso, el TPI) quien está en mejor posición para evaluar la prueba, ya que tiene la oportunidad de escuchar a los testigos mientras declaran y de observar su comportamiento. *Íd.* Los foros apelativos solo podemos intervenir con la apreciación de la prueba oral que haga el juzgador de los hechos cuando éste haya actuado con pasión, prejuicio o parcialidad, o haya incurrido en un claro error al aquilatarla. *Dávila Nieves*, 187 DPR a la pág. 771.

De ordinario, los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos de los tribunales de primera instancia. *E.L.A. v. S.L.G. Negrón-Rodríguez*, 184 DPR 464, 486 (2012); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). Los foros apelativos solo podemos intervenir con la apreciación de la prueba oral que haga el juzgador de los hechos cuando éste haya actuado con pasión, prejuicio o parcialidad, o haya incurrido en un claro error al aquilatarla. *Dávila Nieves*, 187 DPR a la pág. 771; *González Hernández*, 181 DPR a las págs. 776-777; *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916 (2011); *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000). Se podrá intervenir cuando

la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba y cuando la apreciación de la misma se distancia "de la realidad fáctica o sea inherentemente imposible o increíble". *Pueblo v. Santiago et al.*, 176 DPR 133, 148 (2009).

Claro está, se exceptúan de la regla de deferencia las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos están en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *González Hernández*, 181 DPR a la pág. 777. El valor probatorio de un testimonio pericial dependerá de: a) si el testimonio está basado en hechos o información suficiente, b) si el testimonio es el producto de principios y métodos confiables, c) si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso, d) si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica, e) las calificaciones o credenciales de la persona, y f) la parcialidad de la persona testigo. Regla 702 de Evidencia, 32 LPRA Ap. VI, R. 702. Si bien es cierto que la especialidad, o carencia de esta, no afecta la cualificación como perito, esta puede ser decisiva en cuanto al valor probatorio del testimonio pericial. *Dye-Tex de P.R.*, 150 DPR a la pág. 664.

IV.

Examinado cuidadosamente el récord, incluida la grabación de las vistas de impugnación, concluimos que no procede nuestra intervención con la Decisión.

En este caso, la Madre demostró que la solicitud de relocalización es meritoria a la luz de los factores dispuestos por ley y antes señalados; es decir, que la misma es cónsona con el mejor interés de la Menor. La Madre acreditó razones válidas y de peso para el traslado, y ella proveyó la información que le fue requerida

sobre el lugar de vivienda, la residencia, la escuela, el plan médico y la familia de su esposo. La reunificación familiar, razón principal esgrimida por la Madre, es un motivo válido para autorizar una relocalización. La estabilidad que representa para la Menor el matrimonio reunido de su Madre, en su hogar materno, no podía ser ignorada por el TPI.

Resaltamos que el potencial para una mejor calidad de vida para la Menor no disminuye por el hecho de que la Madre permanezca como ama de casa, como hasta ahora lo ha hecho. La Ley 102, *ante*, no exige que el progenitor que solicite el traslado de un menor deba tener un trabajo fuera del hogar en el lugar donde se solicita el traslado. Lo cierto es que la Madre, por el salario y los beneficios del trabajo de su esposo, cuenta en Alaska con los medios para satisfacer las necesidades médicas, físicas y económicas de la Menor y ofrecerle una mejor calidad de vida.

Pesa en nuestro ánimo, además, que del récord surge que la Menor sería capaz de adaptarse a su nuevo hogar y, aunque a la fecha del Informe Inicial se consignó que prefería quedarse en Puerto Rico, a la fecha del Informe Complementario, prefería mudarse a Alaska. Destacamos que, al igual que no hay evidencia de que la Menor fuera manipulada por el Padre o la familia paterna para que verbalizara una preferencia al momento del Informe Inicial, tampoco hay evidencia de que la Menor fuera manipulada para que cambiara su postura. En cualquier caso, la Menor se ha adaptado adecuadamente a la separación de sus padres y a las nuevas familias de ambos progenitores.

Más aún, la Madre ha viajado con la menor a Alaska, por acuerdo de las partes, y no ha impedido que la Menor se relacione con el Padre. Además, del Informe Complementario no se desprende que recientemente hayan surgido problemas con las relaciones paternofiliales. Por su parte, del récord no surge de forma alguna

que la intención o motivo de la Madre para solicitar la relocalización de la Menor sea afectar el vínculo paternofilial o impedir que esta y el Padre se relacionen.

Aunque una relocalización inevitablemente afecta la relación de un(a) menor con la parte no custodia, ello no constituye un factor determinante; de lo contrario, ninguna relocalización sería autorizada, y esa no es la política pública establecida a través de la Ley 102. De hecho, el principio rector en este tipo de caso es el mejor bienestar del menor. Aunque ello típicamente sucede con la cercanía geográfica a ambos padres, pueden haber otros factores que inclinen la balanza hacia una relocalización.

Adviértase, además, que, ante la facilidad de comunicación electrónica disponible hoy día, es mucho más fácil mantener un nivel adecuado de comunicación y relación aunque haya una gran distancia física. En este caso, la Menor está próxima a cumplir 11 años, por lo cual estos medios son aptos para que el Padre mantenga una buena comunicación con ella. Además, el plan de relaciones paternofiliales aprobado por el TPI contempla que la Menor esté físicamente en Puerto Rico por un periodo significativo del año.

Por otro lado, tampoco estaba el TPI obligado por la recomendación de la Trabajadora Social. El Artículo 8 de la Ley Núm. 223-2011, según enmendada, conocida como Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia, establece que el informe de la trabajadora social no es el único factor para considerar por el tribunal en casos de custodia. 32 LPRA sec. 3186.

En fin, la actuación del TPI está razonablemente apoyada en la totalidad del récord y proporciona la mejor respuesta posible a una situación difícil, pues no existe una solución perfecta o idónea en este tipo de caso. Es válido que un padre o madre decida mudarse de Puerto Rico con el fin de alcanzar una mejor calidad de

vida, ya sea en términos de mayor estabilidad familiar, mayor holgadez económica, mejores oportunidades educativas o de salud para los hijos, mejor calidad de vida, o bien por cualquier otro de los factores que inciden sobre el bienestar de una persona y su familia. El grado de libertad mínima que garantiza nuestro ordenamiento constitucional no es compatible con una norma que le permita al Estado interferir de forma indebida e innecesaria con la habilidad de una persona de alcanzar su pleno desarrollo, según sus propios criterios de lo que ello significa.

V.

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari*.

Notifíquese inmediatamente.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones