ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| YARELIZ GONZÁLEZ VERA, Peticionaria, v. PEDRO JUAN ROSADO, Recurrida. | TA2025CE00589 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Utuado. Civil núm.: UT2023RF00139. Sobre: divorcio (ruptura irreparable). |
|---|---|---|

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

RESOLUCIÓN

En San Juan, Puerto Rico, a 31 de octubre de 2025.

El presente recurso de *certiorari* surge de un procedimiento sobre relaciones paternofiliales entre la señora Yareliz González Vera (señora González o peticionaria) y el señor Pedro Juan Rosado (señor Rosado o recurrido), en el cual se evalúa la procedencia de reanudar las relaciones paternofiliales entre el recurrido y su hijo. Mediante este recurso, la peticionaria solicitó la expedición del auto y la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Utuado, el 15 de agosto de 2025.

En la *Resolución* objeto de revisión, el foro primario determinó no permitir que la señora González impugnara el segundo *Informe Social Forense* presentado en el procedimiento de relaciones paternofiliales, que se ventilaba ante su consideración. Ello, por razón de las múltiples oportunidades y prórrogas que se le habían concedido, y que la señora González incumplió.

I

El 6 de junio de 2023, la señora González presentó ante el Tribunal de Primera Instancia, Sala Superior de Utuado, una demanda de divorcio por ruptura irreparable contra el señor Rosado. De la referida demanda

surge que las partes procrearon un hijo menor, Jarod Mathew Rosado González, nacido el 20 de noviembre de 2020[1].

Para la fecha de la demanda de divorcio, la peticionaria se encontraba cobijada por una *Orden de Protección* (OPA2023-034627), emitida al amparo de la *Ley para la Prevención e Intervención con la Violencia Doméstica*, Ley Núm. 54-1989, según enmendada, 8 LPRA sec. 601, *et seq.*, y el recurrido enfrentaba cargos criminales por presuntas violaciones a dicha orden, en el caso UT2023CR00193**.** En atención a ello, la señora González solicitó que se suspendiera cualquier determinación sobre las relaciones paternofiliales hasta tanto se completaran los procesos judiciales relacionados previamente, y se emitiera un *Informe Social* por la Unidad Social de Familia y Menores del tribunal, a fin de evaluar el mejor bienestar del menor[2].

El 29 de febrero de 2024, el señor Rosado presentó una moción relacionada con la custodia, patria potestad y sobre las relaciones paternofiliales del menor[3], a la cual la peticionaria se opuso el 5 de marzo de 2024. En dicha oposición, la señora González solicitó la referida evaluación social y que se realizaran ciertas pruebas psicológicas al recurrido[4]. Ese mismo día, se celebró una vista en la que el tribunal refirió el caso a la Unidad Social de Familia y Menores[5].

El 30 de agosto de 2024, la trabajadora social señora Karla Tirado Lorenzana presentó su primer *Informe Social Forense* (RF2024-12)**,** completado el 23 de agosto de 2024, **en el cual recomendó mantener las relaciones paternofiliales dentro de un plan transicional**[6].

El **12 de septiembre de 2024**, la señora González presentó una moción en la cual manifestó su intención de impugnar el *Informe Social*

---

[1] Entrada 1 de SUMAC TA, apéndice 1.

[2] *Íd.*

[3] *Íd.*, apéndice 51.

[4] *Íd.*, apéndice 54.

[5] *Íd.*, apéndice 56.

[6] *Íd.*, apéndices 71 y 73.

*Forense* (RF2024-12), por entender que el mismo no cumplía con los criterios jurisprudenciales establecidos en *Nudelman v. Ferrer*, 107 DPR 495 (1998), ni con las leyes aplicables a la protección de menores[7]. El **19 de septiembre de 2024**, notificó que la Dra. Ana Rosa Díaz Miranda, Ph.D., psicóloga forense, sería su perito designado para la impugnación y, el **7 de enero de 2025**, sometió el informe pericial de impugnación[8].

El **24 de marzo de 2025,** a solicitud del recurrido, el tribunal ordenó a la Unidad Social una **reevaluación** del informe emitido el 23 de agosto de 2024, y la coordinación de un nuevo plan para establecer las relaciones filiales[9].

En cumplimiento de dicha orden, el **23 de mayo de 2025,** se presentó el **segundo *Informe Social Forense***, nuevamente elaborado por la trabajadora social Tirado Lorenzana. Dicho informe concluyó que ambos progenitores demostraban vínculos afectivos positivos con el menor y recomendó continuar con un plan transicional de relaciones filiales, manteniendo servicios psicológicos y talleres psicoeducativos para fortalecer la comunicación familiar[10].

Mediante una *Orden* de 30 de mayo de 2025, notificada el **2 de junio de 2025**, el tribunal concedió a las partes **hasta el 20 de junio de 2025**, para expresar su posición respecto a las recomendaciones del segundo informe, **advirtiendo que, de no hacerlo en ese término, se entendería que eran acogidas**[11].

La peticionaria **presentó su intención de impugnar** el informe el **25 de junio de 2025**, cinco (5) días fuera del término establecido por el foro primario[12]. No obstante, el tribunal, mediante la *Orden* del **25 de junio de 2025**, le concedió un **plazo adicional de diez (10) días** para especificar

---

[7] Entrada 1 de SUMAC TA, apéndice 74.

[8] *Íd.*, apéndice 76.

[9] *Íd.,* apéndice 128.

[10] *Íd.,* apéndice 128, anejo 1.

[11] *Íd.,* apéndice 131.

[12] *Íd.*

los aspectos del informe que interesaba controvertir. El tribunal reiteró que, **de no cumplir con dicho término**, **procedería a dictar la resolución de conformidad con las recomendaciones contenidas en el *Informe Social Forense***[13].

El **10 de julio de 2025**, transcurrido el término adicional concedido, y en incumplimiento de la orden del Tribunal de Primera Instancia, la peticionaria presentó *Moción en cumplimiento de orden y solicitud de autorización para impugnar el Informe Social Forense*, en la cual planteó múltiples errores en el contenido del segundo informe; entre ellos, datos incorrectos de identificación, omisiones sobre el tratamiento psiquiátrico y estabilidad económica del recurrido, así como deficiencias en el análisis de riesgos[14].

El tribunal, mediante la *Orden* del **11 de julio de 2025**, tomó conocimiento de la moción y le otorgó un nuevo término de **treinta (30) días** para identificar el perito que habría de presentar en el proceso de impugnación[15]. Transcurrido dicho término sin que la peticionaria cumpliera, el **14 de agosto de 2025,** el recurrido solicitó que se dictara la resolución correspondiente, conforme a las recomendaciones del informe, y argumentó los incumplimientos procesales reiterados de la peticionaria[16].

El **15 de agosto de 2025**, el Tribunal de Primera Instancia dictó la *Resolución* en la cual acogió las recomendaciones del segundo *Informe Social Forense* y ordenó la implementación del plan de relaciones paternofiliales, haciendo hincapié en los reiterados incumplimientos de la señora González con los términos concedidos[17].

Ese mismo día, la señora González solicitó la reconsideración de la *Resolución*, y alegó que los incumplimientos con los términos concedidos obedecieron a un error administrativo no perjudicial para el recurrido, y

---

[13] Entrada 1 de SUMAC TA*,* apéndice 131.

[14] *Íd.,* apéndice 139.

[15] *Íd.*, apéndice 142.

[16] *Íd.,* apéndice 146.

[17] *Íd.,* apéndice 147.

planteó la violación del foro primario a su derecho al debido proceso de ley[18].

El **8 de septiembre de 2025**, el recurrido presentó su oposición[19] y, el **9 de septiembre de 2025,** el tribunal declaró sin lugar la reconsideración de la peticionaria[20].

Inconforme, el 9 de octubre de 2025, la señora González acudió ante este foro apelativo mediante este recurso de *certiorari*[21]. Argumentó que el Tribunal de Primera Instancia erró al dictar una *Resolución* en la que acogió las recomendaciones del segundo informe social, a pesar de conocer la intención de la peticionaria de impugnar el mismo; de conocer las áreas específicas que le interesaba controvertir; que obraba en el expediente el nombre de la perito, e incluso un informe de impugnación; violando el derecho a un debido proceso de ley; dejándole desprovista de su derecho a presentar la evidencia que estimase pertinente y sin agotar primero las medidas establecidas en nuestro sistema de derecho.

El 20 de octubre de 2025, el señor Rosado presentó su oposición a la expedición del recurso[22]. En este, el recurrido enfatizó la inobservancia de la peticionaria de las órdenes del tribunal primario y de sus reiterados incumplimientos.

Evaluados los sendos escritos de las partes litigantes, a la luz del derecho aplicable, este Tribunal deniega la expedición del auto.

## II

## A

De ordinario, aquel que presenta un recurso de certiorari pretende la revisión de asuntos interlocutorios, que han sido dispuestos por el foro de primera instancia en el transcurso y manejo del caso. Distinto al recurso de apelación, el tribunal al que se recurre mediante *certiorari* tiene discreción

---

[18] Entrada 1 de SUMAC TA, apéndice 148.

[19] *Íd.,* apéndice 153.

[20] *Íd.,* apéndice 156.

[21] *Íd.*

[22] Entrada 4 de SUMAC TA.

para atender el asunto planteado, ya sea expidiendo el auto o denegándolo. Véase, *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011); *García v. Padró*, 165 DPR 324, 334 (2005). Así pues, el certiorari es un recurso extraordinario cuya característica se asienta en "[…] la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos." *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).

Por su lado, la Regla 52.1 de las de Procedimiento Civil de 2009, delimitó los asuntos que este Tribunal puede revisar mediante el recurso de *certiorari*. A saber:

.    .    .    .    .    .    .    .

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y **por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre** la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en **casos de relaciones de familia**, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

.    .    .    .    .    .    .    .

32 LPRA Ap. V. (Énfasis nuestro).

Ahora bien, la discreción para entender en el recurso de *certiorari* no se ejerce en el vacío. La Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional; a decir:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Cual reiterado, este Tribunal no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo en "un craso abuso de discreción, o que el tribunal [haya actuado] con prejuicio y parcialidad, o que se [haya equivocado] en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial." *Lluch v. España Service*, 117 DPR 729, 745 (1986). Lo anterior le impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro primario. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

B

Tanto nuestra Constitución como la Constitución federal reconocen el derecho fundamental al debido proceso de ley. Const. EE. UU., Enmiendas V y XIV, 1 LPRA; Const. ELA Art. II, sec. 7, 1 LPRA. Por su parte, nuestra Constitución expresa que "ninguna persona será privada de su propiedad o libertad sin un debido proceso de ley". *Íd.*

De otra parte, el debido proceso de ley tiene dos vertientes: la sustantiva y la procesal. *Rafael Rosario & Assoc. v. Depto. Familia*, 157 DPR 306, 329 (2002). Al considerar la doctrina del debido proceso de ley en su aspecto procesal, es necesario confirmar, en primer lugar, la existencia de un interés de libertad o propiedad protegido por esta cláusula constitucional, y que este interés se encuentre afectado por una acción del Estado (*state action*). *Domínguez Castro et al. v. E.L.A. I*, 178 DPR 1, 46 (2010).

En segundo lugar, es menester determinar las características mínimas que debe reunir el procedimiento mediante el cual el Estado pretende afectar negativamente ese derecho protegido constitucionalmente. *Íd*. La característica medular de este derecho es que el procedimiento que siga el Estado sea justo. *Rivera Santiago v. Srio. de Hacienda*, 119 DPR 265, 274 (1987). Diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persisten los requisitos de que el proceso sea justo e imparcial. *Domínguez Castro et al. v. E.L.A. I*, 178 DPR, a la pág. 47.

En el contexto de los procedimientos adversativos, la jurisprudencia ha establecido que, para que se configure un debido proceso de ley, se deben cumplir los siguientes requisitos: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado; y, (6) que la decisión se base en el récord. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 889 (1993).

C

El Tribunal Supremo de Puerto Rico ha consignado que los asuntos de familia son, de ordinario, complicados, pues las controversias envuelven emociones y sentimientos profundos. *Machargo Olivella v. Martínez Schmidt*, 188 DPR 404, 414 (2013). Por esta peculiaridad, los casos de familia están permeados del más alto interés público. *Otero Vélez v. Schroder Muñoz*, 200 DPR 76, 85 (2018). Por tanto, particularmente en los casos que envuelven determinaciones de custodia, el norte del juzgador debe ser el bienestar y los mejores intereses del menor; ello, en virtud de la facultad de *parens patriae* del Estado. *Íd.*, a la pág. 86; *Muñoz Sánchez v. Báez de Jesús*, 195 DPR 645, 651 (2016).

Con respecto a las relaciones paternofiliales, nuestro ordenamiento jurídico reconoce la importancia social de que el progenitor no custodio se relacione con su hijo menor de edad de la manera más libre posible. Ello,

con el propósito de facilitar ampliamente las relaciones humanas y afectivas entre familiares. Esto responde a la normativa de que las relaciones paterno y maternofiliales son parte integral del desarrollo multidimensional de un menor de edad. *Sterzinger v. Ramírez*, 116 DPR 762, 775 (1985). Nótese, sin embargo, que ningún factor es de por sí decisivo. Habrá que sopesarlos todos para juzgar de qué lado se inclina la balanza. *Maldonado v. Burris*, 154 DPR 161, 167 (2001), citando a *Marrero Reyes v. García Ramírez*, 105 DPR 90, 106 (1976).

Por su parte, las Unidades Sociales de Relaciones de Familia y Asuntos de Menores tienen como objetivo "ofrecer al juzgador asesoramiento social mediante evaluaciones periciales que permitan tomar decisiones informadas en los casos ante su consideración". *Muñoz Sánchez v. Báez de Jesús*, 195 DPR, a la pág. 652. Al respecto, las *Normas y Procedimientos de las Unidades Sociales de Relaciones de Familia y Asuntos de Menores (*Normas y Procedimientos de las Unidades Sociales de Asuntos de Menores), Oficina de Administración de los Tribunales, Circular Núm. 6 del 6 de agosto de 2013, establecen lo relativo a la evaluación social forense. Este se define como el "[p]roceso de análisis en el cual se sigue un protocolo uniforme para que el (la) Trabajador(a) Social adiestrado(a) en casos de familia y asuntos de menores pueda brindar asesoramiento al (a la) juez(a)". Normas y Procedimientos de las Unidades Sociales de Asuntos de Menores, a la pág. 8.

En esencia, la evaluación social forense persigue reflejar en forma objetiva y científica la personalidad del individuo y su entorno familiar. *Íd.* De forma específica, la evaluación social forense genera un *Informe Social Forense*, que constituye el "[p]roducto final del proceso de evaluación donde se destacan todas las áreas evaluadas, las fuentes de datos, e integra el conocimiento teórico o razonamiento que fundamente las recomendaciones". *Íd.*, a la pág. 9.

IV

En el presente recurso, la peticionaria aduce que el Tribunal de Primera Instancia vulneró su derecho al debido proceso de ley al acoger las recomendaciones del segundo *Informe Social Forense* sin permitirle ejercer plenamente su derecho a impugnar dicho informe. No obstante, del análisis del expediente y de las órdenes emitidas por el foro primario, no surge una privación arbitraria de sus derechos procesales, sino más bien un patrón de incumplimiento injustificado de los términos concedidos por el tribunal, a pesar de que este proveyó múltiples oportunidades y advertencias expresas sobre las consecuencias de no cumplir.

De entrada, es preciso recordar que el debido proceso de ley no exige una oportunidad ilimitada o indefinida para litigar, sino una oportunidad justa y razonable, conforme a los términos procesales y órdenes judiciales válidamente emitidas. En este caso, el 2 de junio de 2025, el tribunal notificó a las partes el término con el que contaban para expresar su posición respecto al informe social, el cual vencía el 20 de junio de 2025, con la advertencia expresa de que el silencio sería interpretado como la aceptación de las recomendaciones.

Luego de transcurrido el término que se le había concedido, la peticionaria, sin haber solicitado una prórroga ni haber justificado su incumplimiento, solicitó un término adicional para cumplir con la orden el 2 de junio de 2025. Lejos de sancionarla, el tribunal le otorgó un nuevo término de diez (10) días para cumplir con los requisitos ordenados.

Posteriormente, ante otro incumplimiento, el foro primario volvió a mostrar deferencia procesal al tomar conocimiento de su moción tardía del 10 de julio de 2025, y concederle treinta (30) días adicionales para informar el nombre del perito. Inclusive, frente a esta tercera oportunidad, la peticionaria incumplió nuevamente, sin ofrecer justa causa ni evidencia de haber tomado medidas diligentes para cumplir con las órdenes emitidas.

Este patrón demuestra que el Tribunal de Primera Instancia no actuó de manera arbitraria ni privó a la parte de su oportunidad de ser oída. Por

el contrario, el foro primario satisfizo las garantías mínimas del debido proceso, particularmente, las referentes a la notificación oportuna, la oportunidad de presentar evidencia y la adjudicación imparcial de la controversia. La inobservancia reiterada de las órdenes judiciales no puede trasladarse al foro judicial como fundamento para alegar una privación de derechos.

Cabe destacar que, en los casos de relaciones filiales, el interés público exige la pronta y efectiva implantación de medidas orientadas al bienestar del menor. Ante los reiterados incumplimientos de la peticionaria y la ausencia de causa justificada, el tribunal actuó conforme a derecho al acoger las recomendaciones del informe social y ordenar continuar con un plan transicional de relaciones filiales, garantizando así la estabilidad emocional y el interés superior del menor.

En consecuencia, no surge del expediente la existencia de un error manifiesto ni de un abuso de discreción en la actuación del Tribunal de Primera Instancia. Su determinación estuvo debidamente fundamentada, observó las garantías mínimas del debido proceso y respondió al deber judicial de evitar dilaciones indebidas en un proceso de familia que afecta directamente el bienestar de un menor.

V

A la luz de lo antes expuesto, este Tribunal deniega la expedición del recurso de *certiorari.*

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones