ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| NICOLE PHUNG JAVIER<br><br>Peticionaria<br><br><br>V.<br><br>GUILLERMO ECHEVARRÍA VÉLEZ<br><br>Recurrido | TA2026CE00080 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: PO2022RF00412<br><br>Sobre:<br><br>Divorcio Consentimiento Mutuo |

Panel integrado por su presidenta, la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 12 de febrero de 2026.

Comparece la señora Nicole Phung Javier (en adelante, la señora Phung Javier o peticionaria) mediante recurso de *Certiorari* presentado el 20 de enero de 2026, nos solicita que dejemos sin efecto la *Orden* emitida el 5 de diciembre de 2025, notificada el 19 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala de Ponce (en adelante, TPI o foro primario). Mediante el referido dictamen, el TPI declaró no existían circunstancias graves para limitar o suspender relaciones filiales con el padre, el señor Guillermo Echevarría Vélez (en adelante, señor Echevarría Vélez o recurrido).

Por los fundamentos que expondremos a continuación, se expide el Auto solicitado y se confirma la *Resolución* recurrida.

## I.

La controversia ante nuestra consideración tuvo su origen, en un pleito entre la señora Phung Javier y el señor Echevarría Vélez por la custodia de sus tres (3) hijos, menores de edad. A esos fines, el 20 de noviembre de 2024, el foro primario emitió una *Orden* para que se realizara un Informe Social Forense sobre relaciones filiales, custodia, alienación parental y relocalización de los menores (en adelante, Informe Social).[1] En cumplimiento con esa *Orden,* el 23 de octubre de 2025 la trabajadora social del caso, Wanda I. Cintrón González, presentó el Informe Social.[2] En vista de lo anterior, el 27 de octubre de 2025, el TPI dictó una *Orden* en la cual concedió el término de veinte (20) días a los(as) abogados(as) del caso para mostrar causa y fundamento por lo cual el Tribunal no debía acoger las recomendaciones que surgen del Informe Social.[3] El 19 de noviembre de 2025, el recurrido presentó una *Moción Informativa* en la que indicó no tener objeción con el Informe Social.[4] Por su parte, la peticionaria no compareció en el término dispuesto por el TPI.

A esos efectos, el 24 de noviembre de 2025, el foro primario notificó una *Resolución* en la que acogió el Informe Social y ordenó, entre otras cosas, el traslado de los menores al estado de Minnesota con el padre.[5] Igualmente, en ese dictamen estableció un plan de comunicaciones y relaciones maternofiliales.[6]

En desacuerdo con ese dictamen, el 8 de diciembre de 2025, la peticionaria presentó una *Moción de Reconsideración*, mediante la cual solicitó al foro primario que se enmiende o actualice el

---

[1] Entrada #89 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).
[2] Entrada #137 de SUMAC TPI.
[3] Entrada #141 de SUMAC TPI.
[4] Entrada #142 de SUMAC TPI.
[5] Entrada #144 de SUMAC TPI.
[6] Íd.

Informe Social Forense, o en su defecto la preparación de un nuevo informe.[7] En esa línea, solicitó que se incorpore la Orden de Protección en contra del señor Echevarría Vélez, dado a que esta se encuentra vigente hasta el 7 de octubre de 2027. Esta Orden se expidió el 7 de octubre de 2025 por la Sala Municipal de Ponce con número de caso PO2025MU00203.[8] La peticionaria sostuvo que existen determinaciones de hechos que indican que el recurrido incurrió en maltrato físico, verbal, emocional, psicológico y amenazas contra esta; que el recurrido mantuvo un patrón de "maltrato sociológico" mediante querellas frívolas ante el Departamento de la Familia; que existe un patrón de difamación de este hacia la peticionaria; y que, durante la relación, el recurrido agredió a la peticionaria.[9] Por último, en la misma Orden de Protección se le prohibió al recurrido acercarse o interferir con la peticionaria y los menores; contactar o comunicarse con la peticionaria o con los menores, por cualquier medio o por conducto de terceras personas.[10]

El 19 de diciembre de 2025, el TPI notificó la *Orden* en la que declaró "No Ha Lugar" la *Moción de Reconsideración* y expresó, entre otras cosas, que no surgen de la orden actos constitutivos de maltrato o negligencia por parte del padre a los menores, así como tampoco surge del Informe Social.

Inconforme con el proceder del foro primario, el 20 de enero de 2026, la peticionaria acudió ante este Tribunal mediante recurso de *certiorari* y señala los siguientes errores:

> PRIMER ERROR: Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la moción de reconsideración y ordenar entregar los menores al recurrido, ya que dicha orden es jurídicamente

---

[7] Entrada #155 de SUMAC TPI.
[8] Entrada #150, Anejo 1 de SUMAC TPI.
[9] Entrada #155 de SUMAC TPI.
[10] Entrada #150, Anejo 1 de SUMAC TPI.

inexigible y constituye abuso de discreción al ordenar algo que choca frontalmente con una Orden de Protección vigente, que suspende provisionalmente relaciones filiales del recurrido y le prohíbe el contacto con los menores.

SEGUNDO ERROR: Erró el Tribunal de Primera Instancia al sostener que no existían circunstancias graves y al minimizar la Orden de Protección, por no alegar maltrato directo a los menores. La violencia doméstica es un factor pertinente en casos de custodia y la misma Orden de Protección incluye a los menores como protegidos y suspendió las relaciones filiales al recurrido.

TERCER ERROR: Erró el Tribunal de Primera Instancia al no tomar en cuenta en su decisión el alcance y efectos de la Orden de Protección vigente.

CUARTO ERROR: Erró el Tribunal de Primera Instancia al no ordenar una vista evidenciaria o un informe social complementario actualizado y resolver el caso sin asegurarse que contaba con la información más completa y sobre hechos determinantes, lo cual contraviene el deber de parens patriae y el estándar de análisis "objetivo, sereno y cuidadoso" del bienestar del menor.

La parte peticionada ha comparecido mediante Alegato en Oposición al recurso y el caso está perfeccionado para ser resuelto.

**II.**

**A.**

El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023); Rivera et al. v. Arcos Dorado et al., 212 DPR 194, 207 (2023); Torres González v. Zaragoza Meléndez, 211 DPR 821, 846-847 (2023); Caribbean Orthopedics v. Medshape et al., 207 DPR 994, 1004 (2021); 800 Ponce de León v. AIG, 205 DPR 163, 174-175 (2020); IG Builders *et al*. v. BBVAPR, 185 DPR 307, 337-338 (2012). Contrario al recurso de apelación, la expedición o no del auto de *certiorari* solicitado descansa en la sana discreción del Foro Apelativo. Torres González

v. Zaragoza Meléndez, *supra,* pág. 847; Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016).

En particular, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones sobre el referido recurso para la revisión de sentencias y resoluciones dictadas por el Tribunal de Primera Instancia. Rivera et al. v. Arcos Dorados et al., *supra*; McNeil Healthcare v. Mun. Las Piedras I, *supra*; Mun. de Caguas v. JRO Construction, 201 DPR 703, 709 (2019). En lo que nos atañe, esta regla nos faculta por excepción, a revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Ahora bien, con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso *Certiorari*, nuestros oficios se encuentran enmarcados en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR ___ (2025), 4 LPRA Ap. XXII-B. La referida regla señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *Certiorari*. Torres Martínez v. Torres Ghigliotty, 175 DPR 83, 97 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* dispone lo siguiente:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.

C.  Si ha mediado prejuicio, parcialidad, o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F.  Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Es norma reiterada que los jueces de instancia tienen gran flexibilidad y discreción para lidiar con el manejo diario y tramitación de los asuntos judiciales. BPPR v. SLG Gómez-López, *supra*, págs. 333-334. La deferencia al juicio y a la discreción del foro sentenciador está fundamentada en el principio de que los foros apelativos no pueden pretender conducir ni manejar el trámite ordinario de los casos que se ventilan ante el Tribunal de Primera Instancia. Como es sabido, dicho foro es el que mejor conoce las particularidades del caso y quien está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una disposición final. BPPR v. SLG Gómez-López, *supra*, pág. 334, citando a Mejías v. Carrasquillo, 185 DPR 288, 306-307 (2012).

Así pues, como regla general, los foros apelativos no intervendrán en la discreción de los foros primarios a no ser que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción. BPPR v. SLG Gómez-López, *supra*, pág. 334; VS PR, LLC v. Drift-Wind, 207 DPR 253, 273 (2021). El adecuado ejercicio

de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. BPPR v. SLG Gómez-López, *supra*, pág. 335; SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 434-435 (2013); Rivera Durán v. Banco Popular, 152 DPR 140, 155 (2000).

Ahora bien, la discreción cede en las circunstancias en las que se configura un craso abuso de esta o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitaría un perjuicio sustancial a la parte afectada por su determinación. BPPR v. SLG Gómez-López, *supra*; Rivera et al. v. Arcos Dorados et al., *supra*. Por ende, si no se encuentra presente en la petición ante nuestra consideración ninguno de los criterios antes transcritos y la actuación del foro primario "no está desprovista de base razonable ni perjudica derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del juez de instancia a quien corresponde la dirección del proceso". Sierra v. Tribunal Superior, 81 DPR 554, 572 (1959).

**B.**

Como se sabe, los casos de familia están revestidos del más alto interés público. Figueroa v. Del Rosario, 147 DPR 121, 128 (1998). Es por ello por lo que la protección de nuestros niños constituye uno de los pilares de nuestro derecho de familia, así como uno de los deberes que los tribunales de justicia, al amparo de su poder de *parens patriae*.

En Rexach v. Ramírez, 162 DPR 130, 146 (2004), nuestro Tribunal Supremo explicó que el concepto "libertad" de la Decimocuarta Enmienda de la Constitución de Estados Unidos, están incluidos, entre otros, el derecho a casarse, a establecer un

hogar y a criar a los hijos. Igualmente, aseveró que los menores de edad no son meras criaturas del Estado; por ende, la relación entre padres e hijos está protegida constitucionalmente y se ha establecido que los padres tienen derecho a decidir sobre el cuidado, la custodia y el control de sus hijos. Íd.; Véase, además: Rentas Nieves v. Betancourt Figueroa, 201 DPR 416, 428 (2018).

Debe quedar así claramente establecido que el proceso de privar de custodia a cualquiera de los progenitores para que solo uno obtenga —por el mejor bienestar del menor—el pleno disfrute de esta conlleva claras consideraciones de debido proceso de ley. Íd. De lo que se deriva que el debido proceso de ley procesal exige que en todo procedimiento adversativo se cumpla con ciertos requisitos, entre los que se encuentran el que una parte tiene derecho a examinar la evidencia presentada en su contra y a contrainterrogar a los testigos de la otra parte. Íd.

Ante dicha obligación inalienable, los tribunales deben conceder la custodia misma a aquel padre que sea más conveniente y beneficioso para el niño; de modo que promueva su bienestar, desarrollo y vida plena. Recordemos que el TPI tiene el deber de adjudicar la custodia a base del mejor bienestar e interés de los menores; guía y norte de todo caso de familia. Art. 604 del Código Civil de Puerto Rico, 31 LPRA sec. 7283; Rivera v. Morales, 167 DPR 280, 291, 293 (2006); Maldonado v. Burris, 154 DPR 161, 164 (2001); Nudelman v. Ferrer Bolívar, 107 DPR 495, 508-509 (1978); Marrero Reyes v. García Ramírez, 105 DPR 90, 104 (1976).

Para facilitar tan ardua encomienda la jurisprudencia fijó unos criterios o guías que se deben sopesar al momento de otorgar la custodia, a saber: (1) la preferencia del menor; (2) su sexo, edad y salud mental y física; (3) el cariño que puede

brindársele por las partes en controversia; (4) la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; (5) el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; (6) la interrelación del menor con las partes, sus hermanos, y otros miembros de la familia; y 7) la salud psíquica de todas las partes. Es claro que ninguno de estos factores es por sí solo decisivo, por lo que hay que evaluarlos todos en aras de arribar a la solución más justa y razonable posible. Rivera v. Morales, *supra*, a la pág. 293; Nudelman v. Ferrer Bolívar, *supra*, pág. 511-512.

Los criterios antes precisados son esenciales y deben analizarse a la luz de la realidad fáctica del caso en cuestión. Consecuentemente, la no contemplación de estos puede incidir en una decisión de custodia errada y que no garantice el mejor bienestar del menor.

## III.

En esencia, la peticionaria alega que el TPI erró al ordenar la entrega en custodia monoparental al recurrido, ya que a su entender existían circunstancias graves y una *Orden de Protección* vigente que impedían tal determinación. Igualmente, esta aduce que incidió el foro primario al no ordenar una vista evidenciaria o un Informe Social complementario actualizado.

Al estar estrechamente relacionados, discutiremos los errores señalados en conjunto.

Surge del expediente que, el 20 de noviembre de 2024, el foro primario emitió una *Orden* para que se realizara un Informe Social. No obstante, en el transcurso del pleito y mientras se preparaba el informe, la señora Phung Javier solicitó a su favor y la de sus hijos, una *Orden de Protección* en contra del señor Echevarría *Vélez.* Esta se expidió el 7 de octubre de 2025 por la

Sala Municipal de Ponce y tiene una vigencia hasta el 7 de octubre de 2027. Unos días después, el 23 de octubre de 2025, la trabajadora social del caso, Wanda I. Cintrón González, presentó el Informe Social. Allí, la trabajadora social recomendó, entre otras cosas, la custodia monoparental al recurrido.

Ante ello, el 27 de octubre de 2025, el TPI dictó una *Orden* en la cual concedió el término de veinte (20) días a los(as) abogados(as) del caso para mostrar causa y fundamento por lo cual el Tribunal no debía acoger las recomendaciones que surgen del Informe Social.[11] No obstante, la peticionaria no compareció en el término dispuesto por el TPI. De modo que, el 20 de noviembre de 2025, notificada el 24 de noviembre de 2024, el foro primario acogió las recomendaciones del Informe Social y entregó la custodia monoparental de los tres (3) menores al señor Echevarría Vélez.[12]

De todo lo anterior, la peticionaria alega que resulta incompatible que exista una *Orden de Protección* que prohíbe al recurrido acercarse a los hijos de ambos y que se le concediera la custodia a este. Este razonamiento, aunque aparentemente persuasivo, resulta jurídicamente insostenible. Veamos.

Según la peticionaria, no se tomó en consideración la *Orden de Protección* en el Informe Social. Sin embargo, de una lectura del informe, la trabajadora social expresó lo siguiente:

> Al cierre de la intervención se recibió llamada telefónica del padre, verbalizando que la madre solicitó una orden de protección en su contra, debido a que esta alegó que este ha realizado 5 referidos al Departamento de la Familia sin razón. Por lo que, al momento no se ha podido comunicar con los menores. De la misma manera, se procedió a dialogar con la madre y esta validó lo informado por el padre, sobre la orden de protección, debido a que esta siente que los referidos que este realiza, está afectando a los menores y a ella emocionalmente.[13]

---

[11] Entrada #141 de SUMAC TPI.
[12] Entrada #144 de SUMAC TPI.
[13] Entrada #137 de SUMAC TPI, pág. 11.

Por tanto, la trabajadora social tomó en consideración la *Orden de Protección* en contra del recurrido y aun así recomendó que los menores van a estar mejor bajo la custodia de este. **Al examinar el Informe Social, somos de la opinión que se hizo un sereno, concienzudo y cuidadoso análisis de todas las circunstancias para que la decisión sea basada en el mejor interés y bienestar de los menores.**[14]

Lo anterior cobra mayor relevancia cuando del expediente surge que, la Sala Municipal de Ponce indicó en la *Orden de Protección* los siguientes hechos: "[e]l peticionado tiene un patrón de maltrato sociológico radicando hasta 5 querellas ante el Departamento de la Familia [,] querellas frívolas. Todas resultaron frívolas. Todas las querellas fueron encontradas sin fundamento. El peticionado tiene un patrón de difamación contra la peticionaria. Durante su relación, el peticionado la agredió". Siendo ello así, el foro primario entendió que no se presentan circunstancias graves o de emergencia que requieran la protección de los menores de edad.[15] Coincidimos con el foro primario, toda vez que la referida orden no contiene actos constitutivos de maltrato o negligencia por parte del recurrido en contra de los menores, que impidan que se le otorgue la custodia.

Además, el TPI ahondó en cuanto a la *Orden de Protección* y cuando presenta en un caso de custodia que se encuentra en sus últimas etapas:

> De la orden de protección dictada, y anejada por la Sra. Phung Javier el 2 de diciembre de 2025, no se desprenden determinaciones de hecho que muevan a este Tribunal a reconsiderar la resolución dictada en el mejor interés de los menores cuando **contamos con el beneficio de un informe social forense que consideró la totalidad de las circunstancias de ambos progenitores, el derecho aplicable y el deseo e**

---

[14] Véase, Entrada #137 de SUMAC TPI.
[15] Entrada #162 de SUMAC TPI.

**interés de los menores,** previo a emitir sus recomendaciones, hallazgos y conclusiones.

.    .    .    .    .    .    .    .

Este Tribunal no puede avalar la práctica de acudir a las salas municipales en busca de remedios que tienen que ver con los menores de edad, **a sabiendas de que se ventila un proceso de custodia en la Sala de Relaciones de Familia, cuando no existen circunstancias graves o de emergencia que así lo requieran en protección de los menores de edad. Tampoco podemos avalar el que no se informe a este Tribunal oportunamente sobre el remedio obtenido y posteriormente se pretenda utilizarlo como excusa para incumplir con lo ordenado en el presente caso**. (Énfasis nuestro).[16]

En vista de lo anterior, entendemos que tanto como la trabajadora social que preparó el Informe Social y el foro primario, sopesaron adecuadamente la totalidad de las circunstancias de ambos progenitores, el derecho aplicable y el deseo e interés de los menores con la *Orden de Protección*. Asimismo, este Tribunal evaluó minuciosamente el expediente y el Informe Social, lo cual nos permite confirmar con seguridad la decisión tomada por el foro recurrido. Por lo tanto, resolvemos que no incidió el foro primario al acoger las recomendaciones de Informe Social y entregar custodia monoparental de los tres (3) menores al señor Echevarría Vélez.

De otro lado, conviene mencionar que, la peticionaria no compareció dentro del término dispuesto por el TPI para oponerse a las recomendaciones del Informe Social. No es hasta el 8 de diciembre de 2025, que esta presentó una *Moción de Reconsideración* para disputar que el TPI estaba impedido de acoger las recomendaciones del Informe Social. Asimismo, no fue hasta el 2 de diciembre de 2025 el foro primario advino en conocimiento del contenido y alcance de la *Orden de Protección*. A pesar de ello, el TPI evaluó la *Orden de Protección* y los

---

[16] Íd., págs. 6-8.

argumentos esgrimidos por la peticionaria en la *Moción de Reconsideración*. Así pues, resolvemos que el foro primario no incidió al no ordenar una vista evidenciaria o un informe social complementario actualizado.

**IV.**

Por los fundamentos antes expuestos, se expide el Auto solicitado y se confirma la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones